## CONWAY *et al. v.* CASWELL *et al.*

1. Where a policy of insurance was transferred as security for a debt, the fact that the remedy on the latter was barred did not destroy the debt itself, nor did it prevent the holder of the collateral from enforcing her rights thereunder. Civil Code, § 2735.
2. Nor did the fact that the personal judgment against the debtor had become barred render dormant that part of the decree which declared that the creditor held a valid legal title to the policy to the extent specified.
3. Where parties interplead, each occupies the position of a plaintiff in a possessory action, and must recover on the strength of his own title rather than on the weakness of the other's title.
4. It affirmatively appears that until the payment of the debt secured thereby the plaintiffs in error have no title to the policy ; and as to them, therefore, it is immaterial whether the transfer by the administrator to an heir of his intestate was at private sale or without consideration.
5. The ancestor of plaintiffs in error consented in writing, and for twelve years acquiesced in the transfer of the policy to the defendant in error, who was the heir at law of the previous holder. She and her predecessors in title paid all the premiums ; and the judgment in her favor as against the plaintiffs in error was demanded by the evidence.

Argued October 5, — Decided November 12, 1904.

Interpleader. Before Judge Hammond. Richmond superior court. August 15, 1904.

In 1875 G. W. Conway was indebted to Theodore Caswell, with whom he was having business transactions. It being contemplated that the amount of the indebtedness would vary, Conway transferred a policy of insurance on his life, in the Ætna Life Insurance Company, to Caswell as collateral "to the extent of

such interest as he may have when said policy becomes a claim." Caswell and his successors paid all the premiums. In 1887 Caswell died. In 1888 Warren, his administrator, filed a bill in equity against Conway, in which a decree was entered, that Conway was indebted to Caswell $971 with interest from September 1, 1881, for which execution might issue at any time; that for the purpose of protecting the estate against loss Warren should be authorized to keep of force the policy held by the estate on the life of Conway; that for premiums already paid or to be paid on the policy, and for the amount of $971, the estate holds a valid and legal title to the policy. In 1890 Warren, as administrator, transferred to Mrs. Caswell this debt and the policy as collateral to the extent of such interest "as he may have when said policy becomes a claim." On the same day Conway executed an instrument in which he referred to the decree above set out, and recited that Warren, administrator, "has sold at public outcry, pursuant to law, to Lucie W. Caswell, the above-stated debt and judgment, which amounts to over two thousand dollars, and the policy hereinafter mentioned being upon the life of Geo. W. Conway and taken out by said Caswell to secure said debt. And whereas said administrator desires to transfer said indebtedness and said policy to her, the said Lucie W. Caswell, and desires the consent of the said company and the said George W. Conway thereto. Now therefore I, George W. Conway . . hereby admit said indebtedness hereinbefore described, which now amounts to over two thousand dollars, due said estate of Theodore D. Caswell, and consent to the sale and transfer of the same by said administrator to said Lucie W. Caswell, and also consent to a transfer to her of the life-insurance policy on my life in the Ætna Life Insurance Company, . . for two thousand dollars, both by said administrator and said insurance company; said Lucie W. Caswell to hold the same and collect and apply the proceeds thereof at my death to the payment of the indebtedness aforesaid."

Conway died December 12, 1903. Mrs. Caswell as the assignee made out proof of the claim. The two daughters of Conway made out a similar proof, and claimed the proceeds by virtue of the fact that they were his sole heirs at law. In view of the doubt raised by these conflicting claims the company failed to pay either party. Mrs. Caswell thereupon filed suit on the policy.

The daughters of Conway likewise brought suit. Thereupon the Ætna Life Insurance Company filed a petition in Richmond superior court, praying that these suits be enjoined, and that the respective claimants be required to interplead. The judge passed an order enjoining the suits, and on the hearing of the rule nisi an order was passed directing the money to be deposited in the treasury of the court, and requiring the claimants to interplead. This was done, each filing a petition in the nature of a cross-bill, asserting title to the proceeds of the policy; Mrs. Caswell claiming by virtue of the assignment above referred to; and the daughters of Conway, averring that there were no debts and that they were the sole heirs, asserted their claim, insisting that they were entitled to the proceeds, because of the fact that the original transfer was only to secure Caswell to the extent of the claim he might have against Conway at the time of Conway's death; that the original debt from Conway to Caswell was barred; that the judgment rendered on the suit filed in 1888 was dormant; that therefore the estate of Caswell had no claim against Conway. They further contended that the judgment and policy had been transferred to Mrs. Caswell without an order of court, and that the consent by Conway to the transfer by the administrator to her was void as being without consideration, and based upon a statement that the judgment and policy had been sold to her at public outcry under an order of the court of ordinary. They except to the decree in favor of Mrs. Caswell.

*F. W. Capers*, for plaintiffs in error.
*E. H. Callaway* and *W. H. Fleming*, contra.

SIMMONS, C. J. The parties were having constant dealings, so that it was uncertain what would be the balance due at the time of the debtor's death. In 1875, therefore, G. W. Conway transferred his life policy to T. D. Caswell " as collateral . . to the extent of such interest as he [Caswell] may have when said policy becomes a claim." T. D. Caswell died in 1887. G. W. Conway died in 1903. His heirs insist that the debt secured, having become barred before the death of Conway, could not, under the Civil Code, § 3433, be paid by his representative; that the debt did not exist, and therefore by the very terms of the transfer neither the estate nor transferee of Caswell had any " interest " " when the policy became a claim."

1. Treating the case as unaffected by the judgment rendered in 1890, and as controlled by the written transfer of March, 1875, the question presented is not essentially different from that involved in the many decisions holding that though the debt be barred the creditor may still avail himself of the security. In some States, and now probably by statute in England, it has been held that the mortgage or other form of security is a mere incident to the debt, so that when the latter is barred the principal claim ceases to exist, leaving nothing to which the incident can attach. But the general current of authority is to the contrary. The text-writers and most of the cases hold that in creating the debt and in giving the security the debtor made two contracts and contracted for two remedies: one on the debt, the other on the security; that the debt itself was not extinguished by the statute, which only barred the remedy thereon; that notwithstanding the operation of the statute of limitations the debt continued, not only as a moral obligation, but as a legal claim so far as to furnish a consideration sufficient to support a new promise; that the claim therefore remained in existence as a principal debt to which the security still attached as an incident; and hence that the remedy on the security might be made effective, even though the remedy on the main debt was barred. And as an additional reason it would seem that the rule might be properly sustained upon a consideration of the very essence of the contract of hypothecation. It is intended to secure payment. The security may therefore be held until the debt is paid, not simply until it is barred. See, on the subject generally, Ware v. Curry, 67 Ala. 285; Coleb. Col. Sec. (2d ed.) § 101; 1 Wood on Lim.. 62; 13 Am. & Eng. Enc. L. (1st ed.) 705; 21 L. R. A. 550, and note. Nor is the rule limited to mortgages. It has been applied to deposits or pledges of personal property: Jones on Pl. and Col. Sec. (2d ed.) § 582; to the vendor's equitable lien: Harden v. Boyd, 113 U. S. 765; to a lien on a judgment: Higgins. v. Scott, 2 Barn. & Adol. 413; to a wharfinger's lien for general balance: Spears v. Hartley, 3 Esp. 81; to the lien of a corporation on the shareholder's stock: Farmers Bank v. Iglehart, 6 Gill. 50; Reading Trust Co. v. Reading Iron Works, 137 Pa. 282; to pledges of stocks and negotiable bonds: Hancock v. Franklin Ins. Co., 114 Mass. 155; Hartranft's case, 153 Pa. St. 530; Roots

*v.* Salt Co., 27 W. Va. 484; and to the case where a note was transferred as security: *Shipp* v. *Davis*, 78 *Ga.* 201 (5).   Notwithstanding some conflict in the cases elsewhere, in this State the right of the creditor to retain possession, and to sue on the security, though the main debt be barred, is not only recognized in *Elkins* v. *Edwards*, 8 *Ga.* 325, *Shipp* v. *Davis*, 78 *Ga.* 201 (5), and *Allen* v. *Glenn*, 87 *Ga.* 415, but it is also expressly provided in the Civil Code, § 2735, that the creditor may avail himself of the mortgage or other security, even though the evidence of debt is barred.   Of course the remedy on the mortgage, collateral, pawn, or other form of security must be brought in due time and in due form.   If the debt is barred and the creditor holds an absolute deed as security, he may maintain ejectment thereon, but can not obtain a money judgment.   *Duke* v. *Story*, 116 *Ga.* 88.   So, if the right of action on the main debt and on the security have both been barred, the creditor is defeated.   But in the present case the cause of action on the policy was not so barred; for the right to sue did not arise until the death of Conway in 1903.   Any lawful holder of the policy as collateral was therefore authorized to maintain a suit against the insurance company, and to retain the policy or the proceeds thereof against the assignor, Conway, and his representatives, until the debt secured, with interest and premiums, was satisfied.

2. The same result follows, in so far as the case is affected by the decree entered in 1890, whereby a judgment in personam was rendered against Conway, it being further decreed that, to the extent of the principal and interest, and for premiums paid or to be paid, the estate of Caswell held a valid and legal title to the policy.   The proceeding was like that under the Civil Code, § 2770, whereby, in addition to the foreclosure, a personal decree may be rendered against the mortgagor.   *Clay* v. *Banks*, 71 *Ga.* 363 (4 *a*), 374.   Such decrees, or those similar thereto, may be resolved into their component parts.   The mere money decree or judgment in personam therein (Civil Code, §§ 4861, 3761) may become barred or dormant without affecting that part of the decree which is against specific property.   For, as to the judgment in personam or the money decree merely, the lien arises by operation of law, and must be enforced within the time limited by statute.   But the very purpose of a specific decree is to estab-

lish and permanently fix upon the particular property some in-
cumbrance, burden, interest, estate, or right arising from a lien,
contract, obligation, or trust which antedated the decree. This
part of the decree and the rights thereunder are not within the
operation of the dormancy statute. *Wall* v. *Jones*, 62 *Ga.* 728;
*Cain* v. *Farmer*, 74 *Ga.* 38; *Fowler* v. *Bank of Americus*, 114 *Ga.*
417; *Butler* v. *James*, 33 *Ga.* 150. This is manifest when it is
considered that the general object of such a decree is to establish
the titles of one party to a particular property. To say that the
decree became dormant and his right terminated at the end of
seven years would be to make temporary that which had been
definitely fixed. The same is true where specific property is
charged with the payment of a given debt, as on the foreclosure
of a mortgage. *Butt* v. *Maddox*, 7 *Ga.* 498. The rule is notably
applicable in this case, because the title of Caswell's estate to the
policy, while settled by this decree, was worthless unless the
holder was entitled at the maturity of the policy to collect the
funds. Until the death of the assured the remedy could not be
applied nor the collateral made effective.

Of course, in all cases where a mortgage has been foreclosed or
a debt has been charged by decree on specific property, lapse of
time may be considered, in connection with the situation of the
parties and all the other circumstances, in determining whether
the debt so charged has not been paid. *Milledge* v. *Gardner*, 33
*Ga.* 397.

3–5. The policy must therefore be treated as collateral and
enforceable, even though the debt and the personal judgment into
which it has been merged are both barred. Bank *v.* Guttschlick,
14 Pet. 19. The only remaining question, then, is whether in
this case the representatives of Conway can recover the proceeds
of the policy by attacking the transfer to Mrs. Caswell. It is
manifest that the title to the policy, as collateral, is either in
Warren, administrator, or in Mrs. Caswell as subtransferee. In
no event could it revest in Conway, or in the plaintiffs in error as
his representatives, until the payment of the debt for which it was
pledged, and which now amounts to more than twice the face of
the policy. Whether, therefore, the collateral belongs to the estate
of Caswell or to his widow is wholly immaterial to the present
plaintiffs in error. In interpleaders both claimants are in a posi-

tion similar to that of plaintiffs in other possessory actions, where the recovery must be on the strength of their own title rather than on the weakness of their adversary's title. Civil Code, §5004. But beyond this, the plaintiffs in error have failed to show wherein the title of Mrs. Caswell, as transferee, widow, and an heir at law of T. D. Caswell, is not superior to their title as heirs at law of G. W. Conway. The court properly decreed that under the pleadings and evidence the title was in the subtransferee regardless of the question as to whether the assignment in 1890 was for a consideration, or in consequence of the sale not having been had at public outcry.    There was in fact a transfer to her. G. W. Conway consented thereto, and acquiesced therein for more than twelve years before his death, during which time Mrs. Caswell was in possession of the policy, paying the premiums thereon. Certainly as against the plaintiffs in error a decree in her favor was demanded by the evidence.

*Judgment affirmed.    All the Justices concur.*