ELIZA STANTON, APPELLEE, V. EDWARD C. STANTON ET AL.,
APPELLANTS.

18 N. W. 2d 654

FILED MAY 11, 1945. No. 31924.

*Minor & Minor,* for appellants.

*B. H. Bracken* and *Stiner, Boslaugh & Stiner,* for appellee.

Heard before SIMMONS, C. J., PAINE, CARTER, MESSMORE, YEAGER, CHAPPELL, and WENKE, JJ.

PAINE, J.

This is an equity action between contesting claimants over the sum of $1,244.51 held by the clerk of the district court for Kearney county in a partition suit, being a one-eighth part of the proceeds of the sale of certain land. The trial court decreed that this sum should be first applied to discharge the lien of a judgment held by the Kenesaw State Bank and the surplus paid to defendant William P. Stanton,

or the person entitled thereto, and that the petition of intervention of J. J. Gallagher, intervener, should be dismissed, from which the intervener appeals.

The record discloses that Patrick W. Stanton died testate August 17, 1929, a resident of Kearney county. In his last will, made March 6, 1925, he devised a one-eighth interest in 240 acres to each of his children. On April 4, 1930, a petition was filed by Eliza Stanton, a daughter of Patrick W. Stanton, against the other heirs and the Kenesaw State Bank, and prayed for the partition of the land owned by Patrick W. Stanton.

The Kenesaw State Bank filed its answer in the partition suit on May 1, 1930, setting forth that some years before William P. Stanton had owed said bank $1,116 on two promissory notes, bearing interest at 10 per cent, and that suit had been brought and his default was taken, and a judgment in favor of said bank had been entered against him on January 25, 1926, in the sum of $1,125, and that said judgment is in full force and effect, and prays that such judgment be decreed to be a first lien upon the interest of said William P. Stanton in said described real estate, and for such other, further and different relief as may be just and equitable.

On October 13, 1930, the referee reported that said premises could not be partitioned and same should be sold; thereupon the district judge filed a journal entry on October 17, 1930, in which it is ordered that, as there is a contest pending between the other shareholders and the Kenesaw State Bank and other defendants over the share of William P. Stanton in said land, said contest will be determined upon the final hearing and upon the distribution of proceeds if sale is had.

On December 9, 1930, the referee reported the sale of the premises to George H. Porterfield for the sum of $12,000, but on January 2, 1931, this sale was set aside upon the request of the purchaser at said sale, and of all of the defendants and all other parties interested in said action.

However, the district court on September 15, 1936, made

a determination in said partition suit that the lien of the Kenesaw State Bank was a second lien, subject to the lien of the estate, which was, as shown by other records, for the sum of $1,109.11, for two notes given to his father in his lifetime by William P. Stanton, but which the executor had been unable to collect because of the insolvency of said William P. Stanton. The said bank appealed to this court.

In our first opinion, reported in 133 Neb. 563, 276 N. W. 180, we affirmed the trial court. But the second opinion, written on rehearing, found in 134 Neb. 660, 279 N. W. 336, set aside the first opinion, and found that the retainer doctrine did not apply and the executor had no lien on William P. Stanton's distributive share, for the reason that in Nebraska "the doctrine of advancements applies only to intestate estates," and on October 17, 1938, a judgment was entered on the mandate from the supreme court, finding that the lien of the Kenesaw State Bank was superior to the debt due to the estate.

It is shown by the record that William P. Stanton and wife had deeded his interest in his share of his father's real estate to Joseph J. Gallagher on August 20, 1935, and on September 30, 1939, said Gallagher filed petition of intervention in the partition suit, in which he set up that on May 1, 1930, the Kenesaw State Bank in its pleading claimed a lien upon the interest of William P. Stanton in the real estate because of a judgment obtained by said bank on January 25, 1926, and further alleges that no execution was ever issued on said judgment, and the same became dormant on January 26, 1931; that said judgment has never been revived, and said judgment has not been a lien on the interest of William P. Stanton in the real estate devised to him by his father since January 26, 1931, and has never been a lien on the real estate acquired by said Gallagher by the deed executed and delivered to him August 20, 1935, by William P. Stanton and wife.

The Kenesaw State Bank filed its answer to the petition of intervention of Joseph J. Gallagher on November 15, 1939, alleging that on October 17, 1938, judgment was en-

tered on the mandate of the supreme court finding that the lien of the judgment of $1,125 of said bank was superior to any claim or lien of any of the other parties to the action, and that the October, 1938, term of court in and for Kearney county adjourned sine die on January 16, 1939, and that no application has been made to modify, vacate or set aside said judgment, nor any appeal taken from said order and judgment, and that the same is final, complete and conclusive against all of the parties to the partition action, and that the petition of intervention of Joseph J. Gallagher should be dismissed.

Trial was had on October 20, 1941, and the court found generally for the defendant Kenesaw State Bank and against the intervener, Gallagher, and ordered that the petition of intervention of Gallagher be dismissed. The motion for new trial filed by Gallagher, intervener, was duly overruled, and on August 27, 1943, the referee in the partition sale reported that the property had sold for $10,800, and the sale was confirmed and deed ordered, and distribution ordered to all distributees save and except the share of William P. Stanton of $1,244.51, which was to be held pending the decision on this appeal.

The appellant insists that the bank's judgment obtained January 25, 1926, was not a lien after January 25, 1931, as no execution was ever issued thereon, as required by section 25-1515, R. S. 1943, which provides that if execution shall not be sued out within five years of the date of the judgment it shall become dormant and shall cease to operate as a lien on the real estate of the judgment debtor, and therefore on August 20, 1935, when debtor gave a deed to the intervener, Gallagher, the judgment had ceased to be a lien, and Gallagher took the title to the land free of any lien because of the bank's judgment.

The appellant also argues that the only other manner in which the life of a dormant judgment may be prolonged is by a revivor; that section 25-1420, R. S. 1943, provides that such action of revivor must be brought within ten years after such judgment became dormant, which was not done in the instant case.

The appellant insists in his brief that a void judgment is in reality a mere nullity, being supported by no presumption, and can be impeached in any action, either direct or collateral, citing *Radil v. Sawyer,* 85 Neb. 235, 122 N. W. 980. He also cites *Hassett v. Durbin,* 132 Neb. 315, 271 N. W. 867, in which our court said: "A void judgment is in reality no judgment at all. It does not bind the person against whom it is rendered. It may be impeached in any action, direct or collateral."

But, in the case of *Hassett v. Durbin, supra,* the plaintiff failed to get legal service upon the defendant, so the judgment was absolutely void, but in the case at bar the court had jurisdiction of all the parties, and had jurisdiction of the subject matter, and the general rule is that in such a case a judgment is not subject to collateral attack, because the judgment is only voidable, and not void. See 31 Am. Jur., sec. 576, p. 175.

It is also claimed that the sale to J. J. Gallagher relieved the property of the lien of the judgment; but this court has held otherwise, and said that one who purchases property pending a suit in which the title is involved takes the title subject to the judgment or decree that may be entered in such suit against the person from whom he purchases the property, and that "These transfers to these demurring defendants were made by a litigant to a pending suit, in which his title was a matter of controversy, and they must take full notice of all the facts then pending in that case, and actual notice of a pending action is just as effective as would be the filing of a *lis pendens." Johnson v. Olson,* 132 Neb. 778, 273 N. W. 201. See, also, *Martin v. Abbott,* 72 Neb. 89, 100 N. W. 142. The same holding is found in a partition suit in *Clark v. Charles,* 55 Neb. 202, 75 N. W. 563.

"The court having jurisdiction, a party cannot, while the action is pending, dispose of the property and prevent a final judgment in the case." *State v. Neb. Distilling Co.,* 29 Neb. 700, 46 N. W. 155.

"Where a person purchases real estate while an action is pending to subject the property to the payment of a certain

debt, the purchaser is chargeable with notice of the claim, and whatever the form of the decree under the issue made by the pleadings, takes subject to the same." *Nelson v. Bevins,* 19 Neb. 715, 28 N. W. 331.

"When the summons has been served or publication made, the action is pending so as to charge third persons with notice of pendency, and while pending no interest can be acquired by third persons in the subject matter thereof, as against the plaintiff's title; * * * ." R. S. 1943, sec. 25-531.

"The rule that a *pendente lite* purchaser took title to property involved in litigation, subject to the judgment finally entered, was adopted out of considerations of public policy and to inspire confidence in titles based upon the judgment or decree of court." *Munger v. Beard & Bro.,* 79 Neb. 764, 113 N. W. 214.

After the mandate was returned, the district court entered a judgment for the defendant, the Kenesaw State Bank, in the sum of $1,125, and that the same constitutes and is a first lien upon the interest of William P. Stanton in said real estate. The district court adjourned sine die on January 16, 1939, and the judgment thereupon became final. The court has no authority or power to vacate the judgment except for the reasons stated and within the time limited by section 25-2001, R. S. 1943. See *Feldt v. Wanek,* 134 Neb. 334, 278 N. W. 557; *Cronkleton v. Lane,* 130 Neb. 17, 263 N. W. 388.

There is another rule of law that we believe is determinative of the instant case, rather than the dormancy statute, which the appellant relies upon. It is common knowledge that, during the times of depression, partition cases, foreclosures, and other cases have been frequently held on the dockets for many years awaiting a time when better prices would be received at sales by court officers.

In *Herbage v. Ferree,* 65 Neb. 451, 91 N. W. 408, it was held that section 482 of the Code, which is now section 25-1515, R. S. 1943, which provides when a judgment shall become dormant and cease to operate as a lien on the real estate of the judgment debtor, does not apply to a decree for

the sale of specific real property. Other Nebraska opinions holding to the same effect are *Medland v. Van Etten*, 75 Neb. 794, 106 N. W. 1022, and *Harvey v. Godding*, 77 Neb. 289, 109 N. W. 220.

The supreme court of Ohio in an early case said: "Section 422 of the Code, (which is the dormancy statute) * * * does not apply to a decree for the sale of specific real property." *Beaumont v. Herrick*, 24 Ohio St. 445. See, also, *Moore v. Ogden*, 35 Ohio St. 430.

"The mere money decree or judgment in personam therein * * * may become barred or dormant without affecting that part of the decree which is against specific property. For, as to the judgment in personam or the money decree merely, the lien arises by operation of law, and must be enforced within the time limited by statute. But the very purpose of a specific decree is to establish and permanently fix upon the particular property some incumbrance, burden, interest, estate, or right arising from a lien, contract, obligation, or trust which antedated the decree. This part of the decree and the rights thereunder are not within the operation of the dormancy statute. * * * This is manifest when it is considered that the general object of such a decree is to establish the titles of one party to a particular property. To say that the decree became dormant and his right terminated at the end of seven years would be to make temporary that which had been definitely fixed. The same is true where specific property is charged with the payment of a given debt, as on the foreclosure of a mortgage." *Conway v. Caswell*, 121 Ga. 254, 48 S. E. 956. See, also, *Lindsey v. Porter & Garrett*, 140 Ga. 249, 78 S. E. 847; *Sapp v. Warner*, 105 Fla. 271, 144 So. 481.

In *Crowell v. Kopp*, 26 N. M. 146, 189 Pac. 652, the holding follows the Ohio cases, the Nebraska cases, and Georgia cases. It is said that in Georgia the reason is founded upon the proposition "that the Dormant Judgment Act was designed to do away with stale judgments which created liens upon all of the debtor's property, while a decree of foreclosure of a mortgage created no general lien, and was therefore not intended to be within the terms of the statute."

Our court has quite recently held "that a decree of foreclosure of a mortgage is not a judgment within the meaning of section 20-1515, Comp. St. 1929. *Jenkins Land & Live Stock Co. v. Kimsey,* 99 Neb. 308, 156 N. W. 499. We have also held that such section of the statute does not apply to a decree for the sale of specific real property. *Herbage v. Ferree,* 65 Neb. 451, 91 N. W. 408. An examination of the opinions in those cases reveals that decisions of the supreme court of Ohio under a similar statute were relied on and followed. An examination of the decisions of that state on the point now before us discloses that the rule herein announced is supported by the holdings in *Lemert v. Lemert,* 72 Ohio St. 364, 74 N. E. 194, and *Peeke v. Fitzpatrick,* 74 Ohio St. 396, 78 N. E. 519." *In re Application of Miller,* 139 Neb. 242, 297 N. W. 91.

In the case at bar, the bank's judgment was secured in 1926, and in 1930 the pleadings brought that judgment into a partition case, and in this equity suit it was sought to make it a lien upon a specific piece of land which was to be sold in that partition proceeding.

In our opinion, the procedure followed in this litigation to impress the debt upon a specific piece of real estate and the decree in the partition suit awarding the money from the sale thereof to the payment of the bank's claim were not, under the circumstances here, defeated by the operation of the dormancy statute of Nebraska.

Finding no prejudicial error in the decree of the district court, the same is hereby affirmed.

AFFIRMED.