CHERYL PHYLIS MARSHALL, APPELLANT, V. GARY LYNN MARSHALL, APPELLEE.

482 N.W.2d 1

Filed March 27, 1992.    No. S-89-819.

James R. Place and Scott H. Rasmussen, of Place and Rasmussen, for appellant.

John A. Rickerson, of Rickerson, Welch & Kruger, for appellee.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

SHANAHAN, J.

The district court for Douglas County vacated its previous child support order, which was a modification of a Texas divorce decree registered in Nebraska under the Uniform Enforcement of Foreign Judgments Act (UEFJA), Neb. Rev. Stat. §§ 25-1587 to 25-15,104 (Reissue 1989), and vacated a related judgment in a garnishment proceeding based on the modified foreign judgment. Cheryl Phylis Marshall, the custodial parent of the child for whom support was ordered under the Texas decree, appeals and claims that the district court erred in vacating the modified support order and garnishment judgment. We affirm.

Cheryl and Gary Lynn Marshall were divorced in the court of domestic relations in Harris County, Texas, on September 13, 1976. The court, in its decree, ordered that Gary Marshall pay child support in the amount of $150 per month for each of the Marshalls' three minor children.

In August 1977, Cheryl moved with the Marshall children to Omaha. On November 10, 1981, in the district court for Douglas County, Cheryl filed her "Application for Registration of a Foreign Judgment," which resulted in registration of the Texas decree in Nebraska on January 15, 1982. Then, on February 12, in the district court for Douglas County, Cheryl Marshall filed an application to modify the support order in the Texas divorce decree, requesting an increase in child support for the only remaining minor Marshall child. On September 10, after a hearing personally attended by Cheryl and Gary Marshall, the court granted Cheryl's modification application and increased Gary's child support payment to $250 per month until February 1983, when child support would automatically increase to $325 per month. No appeal was taken from the modified judgment for child support.

Although the record does not reflect a precise history of Gary's payments of child support, by late 1988, Gary, who lived in Texas, was $7,162.50 in arrears on his support obligation. At that point, Cheryl commenced a garnishment proceeding against Gary's employer, Continental Airlines, which had an office at Eppley Airfield in Omaha. After Continental failed to answer the summons and interrogatories in the garnishment proceeding, the district court, on January 6, 1989, granted Cheryl a default judgment against Continental pursuant to Neb. Rev. Stat. § 25-1028 (Reissue 1989) (judgment based on garnishee's failure to answer garnishment interrogatories).

After the Douglas County Sheriff's Department seized $53 in cash from Continental's Omaha office pursuant to the garnishment judgment, on March 13, 1989, Continental filed its motion to set aside the garnishment judgment and claimed that "the action of the District Court of Douglas County in modifying the Texas decree is of no force and effect." On April 19, Gary Marshall filed his motion to set aside the modified judgment for support, alleging that the Nebraska court, in modifying the Texas judgment, "did not have jurisdiction to increase the child support in the registration of a foreign judgment action." On May 12, the district court granted both motions, vacating the modified child support judgment and the default garnishment judgment against Continental. The district court decided that under *Riedy v. Riedy*, 222 Neb. 310, 383 N.W.2d 742 (1986), the court lacked subject matter jurisdiction to modify the Texas judgment previously registered in 1982 because Cheryl had filed for registration of her divorce decree under UEFJA.

In *Riedy*, we reversed a district court judgment which decreased the amount of future alimony payments ordered under an Iowa divorce decree registered in Nebraska pursuant to UEFJA. After the ex-wife registered the Iowa decree, her former husband applied for a reduction in future alimony payments. In *Riedy* we held that although Nebraska courts clearly have jurisdiction to enforce accrued alimony payments in a divorce decree registered under UEFJA, Nebraska courts lack subject matter jurisdiction to modify money obligations which have not yet accrued under a foreign judgment registered

in Nebraska. Thus, in *Riedy*, we concluded that UEFJA "provides a means of enforcing accrued judgments and does not permit the enforcement of unaccrued money obligations. Having no jurisdiction to enforce the unaccrued money obligations, the trial court had no jurisdiction to modify those obligations." 222 Neb. at 312, 383 N.W.2d at 744.

Although *Riedy* dealt with alimony to be paid in the future and Marshalls' case involves a registered Texas judgment for child support, the identical principle applies in both cases, since the question is whether a Nebraska court can modify unaccrued money obligations imposed by a foreign judgment registered in Nebraska under the UEFJA. In both situations, a Nebraska court lacks subject matter jurisdiction to modify a registered foreign judgment. Therefore, we hold that registration of a foreign judgment under the Uniform Enforcement of Foreign Judgments Act, § 25-1587 et seq., does not vest subject matter jurisdiction in a Nebraska court for modification of the foreign judgment.

In an effort to support her position on appeal, Cheryl Marshall relies on *Johnson v. Johnson*, 215 Neb. 689, 340 N.W.2d 393 (1983), wherein we reversed a district court's modification of child support obligations under an Illinois divorce decree registered in Nebraska under UEFJA, but did so without reference to the issue of subject matter jurisdiction. Cheryl argues that our statement in *Johnson* that the ex-husband "was free, at any time he chose, to petition the court for modification," 215 Neb. at 693, 340 N.W.2d at 396, shows that a Nebraska court has jurisdiction to effectuate modification of a foreign judgment registered in Nebraska. We disagree with the preceding view of *Johnson*. First, the "court" mentioned in the quoted passage from *Johnson* was the Illinois circuit court which entered the original decree. Second, as demonstrated later in *Riedy*, "the language of [the UEFJA] nonetheless manifests that only accrued money obligations come within the purview of the act . . . ." 222 Neb. at 311, 383 N.W.2d at 743. In any event, to the extent that language in *Johnson* may indicate that a Nebraska court can modify an unaccrued money obligation under a foreign judgment registered in Nebraska and, therefore, conflicts with *Riedy* and

our decision today, *Johnson* is overruled.

Another part of Cheryl Marshall's argument is that the Texas child support judgment, registered under UEFJA, should be subject to modification the same as a child support judgment registered under the Revised Uniform Reciprocal Enforcement of Support Act (URESA), Neb. Rev. Stat. §§ 42-762 to 42-7,104 (Reissue 1988). We disagree with the preceding view.

It is true that Nebraska law does provide a method by which Nebraska courts may obtain jurisdiction to modify unaccrued child support obligations imposed by a foreign divorce decree, namely, URESA. As we stated in *State ex rel. Gaddis v. Gaddis*, 237 Neb. 264, 268, 465 N.W.2d 773, 775-76 (1991):

> [U]nder the Revised Uniform Reciprocal Enforcement of Support Act, [Neb. Rev. Stat.] §§ 42-762 to 42-7,104 (Reissue 1988), an "obligee may register the foreign support order in a court of this state," § 42-797, and "[u]pon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state," § 42-7,101(a). If there is personal jurisdiction over a child support obligor, an obligee may then seek a modification of a registered foreign child support order in the same manner as an obligee may seek modification of a child support order initially entered by a Nebraska court.

Because the Uniform Enforcement of Foreign Judgments Act and the Revised Uniform Reciprocal Enforcement of Support Act are legislative enactments, availability of either act is limited by the statutory provisions in each act. For instance, under URESA, the remedy of civil contempt is available pursuant to § 42-770:

> All duties of support, including the duty to pay arrearages, are enforceable by a proceeding under sections 42-762 to 42-7,104 including a proceeding for civil contempt. The defense that the parties are immune to suit because of their relationship as husband and wife or parent and child is not available to the obligor.

As an additional example, modification of a support order is specifically authorized by URESA in § 42-7,101(a):

> Upon registration the registered foreign support order

shall be treated in the same manner as a support order issued by a court of this state. It shall have the same effect and shall be subject to the same procedures, defenses, and proceedings for reopening, vacating, or staying as a support order of this state and may be enforced and satisfied in like manner.

By contrast, UEFJA has no provision for modification or alteration of a foreign judgment, decree, or order. Under UEFJA, a registering jurisdiction enforces a foreign judgment through remedies such as levy and execution on the judgment debtor's property that is subject to satisfaction of the judgment debt. See §§ 25-1590 and 25-1592. Concerning UEFJA, this court stated in *Sullivan v. Sullivan*, 168 Neb. 850, 855, 97 N.W.2d 348, 352 (1959): "[T]he legislative intent was to grant to the judgment creditor by the right of levy the same right which the holder of a domestic judgment has with reference to the property and rights of a judgment debtor." This differs from the stated purpose of URESA, which is to "improve and extend by reciprocal legislation the enforcement of duties of support." § 42-762.

The Minnesota Supreme Court has construed UEFJA as follows:

The purpose of the Act is to implement the Full Faith and Credit Clause, U.S. Const. art. IV, § 1, and to facilitate interstate enforcements of judgments by providing a summary procedure by which a judgment creditor may enforce the judgment in an expeditious manner in any jurisdiction in which the judgment debtor is found. *See, e.g., Thompson v. Safeway Enterprises, Inc.*, 67 Ill.App.3d 914, 25 Ill.Dec. 561, 385 N.E.2d 702 (1978).

. . .

. . . After a foreign judgment has been duly filed, the grounds for reopening or vacating it are limited to lack of personal or subject matter jurisdiction of the rendering court, fraud in procurement (extrinsic), satisfaction, lack of due process, or other grounds that make a judgment invalid or unenforceable.

*Matson v. Matson*, 333 N.W.2d 862, 867 (Minn. 1983).

While UEFJA and URESA may have similar registration

requirements, the acts are specific and distinct legislation designed for different situations and results. Consequently, under the circumstances in the Marshall case, one cannot invoke the provisions of one legislative act by complying with the provisions in a different legislative act.

Cheryl Marshall also contends that Gary Marshall is estopped from challenging the validity of the child support modification by virtue of his failure to complain earlier. That contention is a misperception of jurisdiction. Because the district court's 1982 judgment modifying the Texas child support obligation was entered without subject matter jurisdiction, the modified judgment is clearly void. It is the longstanding rule in Nebraska that "a void judgment may be attacked at any time in any proceeding." *Lammers Land & Cattle Co. v. Hans*, 213 Neb. 243, 249, 328 N.W.2d 759, 763-64 (1983). Accord *Drennen v. Drennen*, 229 Neb. 204, 426 N.W.2d 252 (1988). Moreover, " '[a] void judgment is in reality no judgment at all. It does not bind the person against whom it is rendered. It may be impeached in any action, direct or collateral.' " *Stanton v. Stanton*, 146 Neb. 71, 75, 18 N.W.2d 654, 656 (1945) (quoting from *Hassett v. Durbin*, 132 Neb. 315, 271 N.W. 867 (1937)). See, also, *Shade v. Kirk*, 227 Neb. 775, 420 N.W.2d 284 (1988) (a void judgment is subject to collateral attack); *Griffin v. Vandersnick*, 210 Neb. 590, 316 N.W.2d 299 (1982) (a judgment entered without jurisdiction is void and subject to collateral attack); *Strawn v. County of Sarpy*, 154 Neb. 844, 49 N.W.2d 677 (1951). Gary Marshall's paying any or all sums due under the modified but void judgment does not operate to validate the void judgment. "Litigants cannot confer subject matter jurisdiction on a judicial tribunal by either acquiescence or consent." *Coffelt v. City of Omaha*, 223 Neb. 108, 110, 388 N.W.2d 467, 469 (1986). Accord, *In re Interest of Adams*, 230 Neb. 109, 430 N.W.2d 295 (1988); *Andrews v. City of Lincoln*, 224 Neb. 748, 401 N.W.2d 467 (1987); *In re Interest of L.D. et al.*, 224 Neb. 249, 398 N.W.2d 91 (1986).

Finally, Cheryl Marshall urges that even if the modified and underlying child support judgment has been entered without jurisdiction, the district court abused its discretion by also vacating the garnishment judgment against Continental.

Cheryl argues that under § 25-1028, a garnishee who fails to answer a summons and interrogatories is presumed to be indebted to the defendant for the full amount of the plaintiff's claim, and the failure to answer results in a penalty to the garnishee in the amount of the judgment. It has been the rule in Nebraska, virtually since Nebraska's entry into statehood, that if the judgment underlying a garnishment is vacated, the garnishee is discharged from liability in the garnishment proceedings. As stated in *Clough v. Buck*, 6 Neb. 343, 347 (1877):

> [T]he whole proceeding must be supported by a judgment *in esse*. And if after such process has been had the judgment is reversed, set aside, or vacated, the execution falls with it, and the garnishment becomes wholly dissolved, for there is nothing left to support either the one or the other.

When the district court's judgment modifying the registered Texas child support order was nullified by the district court's lack of subject matter jurisdiction for the modification, the resulting garnishment judgment, rendered on the basis of a void judgment, was subject to vacation.

Because Cheryl Marshall's assignments of error are without merit, the judgment of the district court vacating the 1982 modified child support order in the Texas decree and the subsequent garnishment judgment based on the modified Texas judgment is affirmed.

AFFIRMED.