DEBBI JEAN LAMB, APPELLEE, V.
KEITH WILLIAM LAMB, APPELLANT.
707 N.W.2d 423

Filed December 20, 2005. No. A-05-044.

Michael S. Borders and Julianna S. Jenkins, of Sennett, Duncan, Borders & Jenkins, P.C., L.L.O., for appellant.

Cheryl C. Guggenmos, of Guggenmos, England & Peterson, for appellee.

INBODY, Chief Judge, and SIEVERS and CARLSON, Judges.

SIEVERS, Judge.

## INTRODUCTION

Keith William Lamb appeals the order of the Custer County District Court granting the application of Debbi Jean Lamb, now known as Debbi Jean Rhoad, to modify a Wyoming decree of dissolution. That application requested changing the custody of the parties' minor child, Daniel, to Debbi. We reject Keith's claim that the Arizona courts had jurisdiction, and we find that the Nebraska district court had jurisdiction to award Daniel's custody to Debbi but that the court lacked subject matter jurisdiction to modify the Wyoming divorce decree with respect to child support. Thus, we affirm the district court's order concerning child custody, but we reverse and vacate the district court's order concerning child support.

## FACTUAL AND PROCEDURAL BACKGROUND

Debbi and Keith were married on June 12, 1976. Three children were born of the marriage: Jeremy, born March 21, 1980; Justin, born December 22, 1981; and Daniel, born December 27, 1989. Daniel is the only child at issue in these proceedings. Debbi and Keith were divorced pursuant to a decree of dissolution entered in Laramie County, Wyoming, on January 11, 1991. The decree granted custody of the three children to Debbi.

On November 8, 1995, an order modifying the divorce decree was entered by the Wyoming court, which found that there was a substantial change in circumstances warranting a modification of the custody of the minor children. Keith was given "sole, complete and exclusive care, custody and control" of the minor children, subject to Debbi's "frequent and liberal visitation." Debbi was ordered to pay child support of $176.66 per month.

After the divorce, Keith moved from Wyoming to Colorado, and then in late 1994, he moved to Arizona. On July 16, 1999, he married Michelle. One child was born of that marriage, and Keith adopted Michelle's two children from a previous marriage. Keith and Michelle were divorced in Arizona on May 30, 2003.

Michelle obtained custody of the three children, and Keith was ordered to pay child support of $2,369 per month for the three children.

Keith is employed as an airline pilot, and his 2003 income tax forms show he earned wages of $136,561 that year. Keith testified that he flies three to four international trips per month and is home about 15 to 25 days during the month. At the time of trial, Keith lived in Arizona with his girl friend, whom he had been dating for 2 years. Keith testified that although he had filed for bankruptcy prior to trial, an order of discharge had not been entered.

Debbi moved from Wyoming to Nebraska in 1998. At the time of trial, she was employed as a "personal care giver," working 17 hours per week at $8 per hour. In May 2000, Daniel came to Nebraska to visit Debbi for the summer. After that summer visit, Daniel never went back to live with Keith. Debbi testified that in the summer of 2000, Daniel came to live with her pursuant to an agreement with Keith, and that in August, Keith provided Debbi a power of attorney for Daniel. Keith claims that the parties agreed that Daniel would live with Debbi for one school year, while Debbi said that they did not agree to a specific time limitation.

On October 23, 2001, Debbie filed a "Petition for Exercise of Jurisdiction" in the Custer County District Court. While there is not a specific order ruling on such petition, the court obviously exercised jurisdiction as shown by the subsequent proceedings we detail herein. On April 4, 2002, Debbi filed an "Application for Ex Parte Order of Custody" in the district court for Custer County, and on that same day, the court granted Debbi temporary custody of Daniel pursuant to an ex parte order. Keith testified at trial that in April 2002, he came to Nebraska to retrieve Daniel but discovered Debbi had obtained temporary custody of him.

On April 4, 2002, Keith filed with the Custer County District Court a "Special Appearance," followed by an application for modification or dismissal of the ex parte order of custody filed on April 15. On April 18, the district court granted Keith's application for modification to the extent that the ex parte order was to expire on May 10, 2002, but denied the remainder of the application. The court noted that Keith's filing of the application

for modification constituted the "entry of a voluntary appearance and is the equivalent of personal service of process," thereby implicitly overruling the special appearance. On July 22, the district court entered an order continuing "the temporary custody order granted on April 18, 2002," subject to reasonable rights of visitation and weekly telephone contact.

On May 3, 2004, Debbi filed an application to modify the decree, requesting the Custer County District Court to grant her custody of Daniel and to require Keith to pay child support. The court, following a hearing on the matter, entered an order on November 4, 2004, finding that the court had had jurisdiction since October 2001 and that custody of Daniel should be awarded to Debbi. Keith was granted visitation, in accord with *Wilson v. Wilson*, 224 Neb. 589, 399 N.W.2d 802 (1987), and was ordered to pay child support of $991 per month beginning September 1, 2004. Keith's motion for new trial was overruled, and he now appeals to this court.

## ASSIGNMENTS OF ERROR

Keith asserts, reassigned and restated, that the Custer County District Court lacked jurisdiction under the Nebraska Child Custody Jurisdiction Act, lacked jurisdiction to modify the child support order from Wyoming given the provisions of Nebraska's Uniform Interstate Family Support Act, and erred in granting Debbi custody of Daniel.

## STANDARD OF REVIEW

When a jurisdictional question does not involve a factual dispute, determination of a jurisdictional issue is a matter of law which requires an appellate court to reach a conclusion independent from the trial court's; however, when a determination rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect. *Heistand v. Heistand*, 267 Neb. 300, 673 N.W.2d 541 (2004).

Child custody determinations are matters initially entrusted to the discretion of the trial court, and although reviewed de novo on the record, the trial court's determination will normally be affirmed absent an abuse of discretion. *Id.*

█ Statutory interpretation presents a matter of law which an appellate court determines independent of the conclusions reached by a lower court. *Groseth v. Groseth*, 257 Neb. 525, 600 N.W.2d 159 (1999).

## ANALYSIS

*Jurisdiction to Determine Custody of Daniel.*

Keith asserts that the Custer County District Court did not have jurisdiction to modify the Wyoming decree and to grant Debbi custody and that the case is governed by the Nebraska Child Custody Jurisdiction Act (hereinafter NCCJA) and not by the Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA). The provisions of the NCCJA, Neb. Rev. Stat. §§ 43-1201 through 43-1225 (Reissue 1998), were repealed by 2003 Neb. Laws, L.B. 148, § 105, and replaced by the UCCJEA, Neb. Rev. Stat. §§ 43-1226 through 43-1266 (Reissue 2004), operative January 1, 2004. We must first determine which of the two acts—the NCCJA or the UCCJEA—is controlling here.

█ Section 43-1266 provides: "A motion or other request for relief made in a child custody proceeding or to enforce a child custody determination which was commenced before January 1, 2004, is governed by the law in effect at the time the motion or other request was made." A "[c]hild custody proceeding means a proceeding in which legal custody, physical custody, or visitation with respect to a child is an issue." § 43-1227(4). "Commenced" means "the filing of the first pleading in a proceeding." § 43-1227(5). In determining whether the NCCJA or the UCCJEA applies, we must first determine when a motion or other request for relief was filed in a "child custody proceeding."

On April 4, 2002, Debbi filed in the Custer County District Court an "Application for Ex Parte Order of Custody." On that same day, the court entered an ex parte order granting Debbi custody of Daniel for an indefinite amount of time. Keith then filed a motion to modify or dismiss the ex parte order. Because the trial judge, District Judge Ronald Olberding, was not available to hear the motion, Keith requested that another judge hear the motion. The motion was heard by then District Judge William Cassel, who entered an order on April 18 stating that Judge Olberding's ex parte order was to expire on May 10, 2002, and

that "[t]he burden of initiating such hearing for further temporary custody rests upon [Debbi]; however, nothing in this order shall preclude [Keith] from seeking an earlier hearing consistent with the notice requirements of the [NCCJA] and Rule 8-3 of this court." Judge Cassel "otherwise denied" Keith's motion to modify or dismiss the ex parte order. Therefore, Judge Cassel's order essentially terminated Judge Olberding's ex parte order by finding that such would "expire" on May 10. However, on May 2, a hearing was held on the temporary custody order, at which hearing both parties were represented by counsel. On July 22, Judge Olberding entered an order stating that "the temporary custody order granted on April 18, 2002, is continued, subject to rights of reasonable visitation in [Keith] and at least once per week telephone privileges." No appeal was taken from the orders of April 4, April 18, or July 22. On May 3, 2004, Debbi filed her "Application to Modify Order of Decree of Dissolution," and it was this pleading which resulted in the order of the Custer County District Court that Keith now appeals to this court.

We first look to Debbi's "Application for Ex Parte Order of Custody" filed on April 4, 2002, which resulted in the requested ex parte order granting Debbi temporary custody of Daniel. The question is whether such application and ruling thereupon constituted a "child custody proceeding" under § 43-1227(4), remembering that while Daniel's custody was at issue, there was no notice to Keith and no hearing in which Keith had an opportunity to participate. A "proceeding" is defined by Black's Law Dictionary 1221 (7th ed. 1999) as follows:

> 1. The regular and orderly progression of a lawsuit, in - cluding all acts and events between the time of commencement and the entry of judgment. 2. Any procedural means for seeking redress from a tribunal or agency. 3. An act or step that is part of a larger action. 4. The business conducted by a court or other official body; a hearing.

Even if Debbi's "Application for Ex Parte Order of Custody" filed on April 4, 2002, is not a motion or request for relief in a "child custody proceeding" because of the lack of notice and hearing—a question we need not decide—Keith's "Application for Modification or Dismissal of Ex Parte Order of Custody" is clearly a motion made in a child custody proceeding, given the

expansive definition of that term in § 43-1227(4). Keith's motion, filed April 15, requested that the Custer County District Court modify its ex parte order to allow Keith to maintain custody of Daniel as "decided in the District Court of Laramie County, Wyoming." A hearing was held on Keith's motion. Section 43-1266 provides: "A motion or other request for relief made in a child custody proceeding . . . which was commenced before January 1, 2004, is governed by the law in effect at the time the motion or other request was made." Because Keith's April 15, 2002, motion was made in a "child custody proceeding" well before January 1, 2004, the NCCJA is the applicable act because it was in effect on April 15, 2002.

In using Keith's April 15, 2002, "Application for Modification or Dismissal of Ex Parte Order of Custody" as the determinative pleading for purposes of commencement, we rely largely on the fact that such pleading resulted in a continuation of temporary custody for several years, until Debbi filed her "Application to Modify Order of Decree of Dissolution" asking that the "permanent care, custody and control" of Daniel "remain" with her, based on a material change of circumstances. In short, the Nebraska district court had placed temporary custody with Debbi in 2002, as a result of Keith's April 15 application, which beyond question began a "proceeding in which legal custody, physical custody, or visitation with respect to a child [wa]s an issue." See § 43-1227(4).

We now turn to whether the district court had jurisdiction under the NCCJA. In determining whether a court should entertain a child custody proceeding having interstate implications, the court should first determine whether it has jurisdiction and then determine whether it is appropriate to exercise jurisdiction. *Paulsen v. Paulsen*, 11 Neb. App. 582, 658 N.W.2d 49 (2003). Section 43-1214 provides that a Nebraska court may modify a custody decree from another state if (1) it appears that the court which rendered the decree does not now have juris-diction under jurisdictional prerequisites substantially in accordance with §§ 43-1201 to 43-1225 or has declined to assume jurisdiction to modify the decree and (2) the court of this state has jurisdiction. See, also, *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000) (Nebraska court must first determine whether

issuing state appears to have continuing exclusive jurisdiction under jurisdictional prerequisites enumerated in Uniform Child Custody Jurisdiction Act; if issuing state no longer has continuing exclusive jurisdiction, custody decree may be modified by Nebraska court if Nebraska itself has jurisdiction under NCCJA). The *Hamilton* court said, "The NCCJA, Nebraska's version of the Uniform Child Custody Jurisdiction Act (UCCJA), speaks to the jurisdiction of courts of this state to modify child custody decisions initially determined in the courts of other states." 260 Neb. at 892, 620 N.W.2d at 110.

"The state which initially enters a custody decree may lose continuing exclusive jurisdiction to modify the decree if it loses all or almost all connection with the child." *Hamilton v. Foster*, 260 Neb. at 894, 620 N.W.2d at 111. When a child and all parties have moved away from the state in which an initial custody decree was granted, deference to that state's continuing jurisdiction is no longer required because the issuing state no longer meets the jurisdictional prerequisites of § 43-1203(b). *Hamilton v. Foster, supra.*

We first look to whether Wyoming retains continuing exclusive jurisdiction over the custody matter. The Wyoming court initially granted Debbi custody of Daniel pursuant to the parties' dissolution action in 1991. The Wyoming court also modified the decree in 1995, granting Keith custody of all three children. By the time the Wyoming court's 1995 modification decree was entered, Keith and the children had moved to Arizona. In 2000, Daniel moved to Nebraska to live with Debbi, and he has lived there ever since. Thus, Daniel has lived in either Arizona or Nebraska since 1995, and there is no evidence that Daniel has had any connection with Wyoming since 1995. Moreover, Keith has not lived in Wyoming since the dissolution action and Debbi has not lived there since 1998. Because both parties and Daniel have moved from Wyoming and have had no connection thereto for several years, deference to Wyoming's continuing jurisdiction is not required. See *Hamilton v. Foster, supra*. We now turn to whether Nebraska has jurisdiction. See *id.* (when issuing state no longer has continuing exclusive jurisdiction, it is unnecessary to also show that issuing state declined jurisdiction).

 Pursuant to § 43-1203(1), a Nebraska court has jurisdiction to decide custody matters by modification if

(a) [t]his state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state.

For purposes of the NCCJA, "home state" is defined as

the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months . . . . Periods of temporary absence of any of the named persons shall be counted as part of the six-month or other period.

§ 43-1202(5).

In its November 4, 2004, order, the Custer County District Court found that Daniel had resided in Nebraska since May 2000 and that the Custer County District Court had had jurisdiction since October 2001. Daniel came to Nebraska in May 2000 so that Debbi could exercise her summer visitation. In August 2000, the parties agreed to allow Daniel to reside with Debbi for at least the 2000-2001 school year, and possibly longer. In May 2001, Keith wanted Daniel to come back to Arizona, but Debbi chose to exercise her 2001 summer visitation. Daniel continued to live in Nebraska with Debbi from 2001 until the time of trial, as we have recounted above in the "Factual and Procedural Background" portion of our opinion, although he did visit Keith in Arizona.

 Keith argues that Daniel was only in Nebraska because of the parties' agreement and that Daniel was merely "visiting" Nebraska. Brief for appellant at 15. The plain and ordinary meaning of the statute says that in order for Nebraska courts to have jurisdiction, Daniel must have "lived" in Nebraska with a parent for the 6 months immediately preceding the action. See *Premium Farms v. County of Holt*, 263 Neb. 415, 640 N.W.2d 633 (2002) (statutory language is to be given its plain and ordinary meaning). Webster's Encyclopedic Unabridged Dictionary of the English Language 838 (1989) defines "live" as "to dwell

or reside." Daniel was staying in Debbi's home and going to school in Nebraska from August 2000 until the time of trial. She had power of attorney as of August 11, 2000, "to do all acts and sign and execute all necessary documents pertaining to the education, health, welfare, and safety" of Daniel. The document granting Debbi power of attorney has on its face no time limit, and while the evidence is in conflict as to whether the parties' oral agreement included a time limit, the crucial fact is that the evidence undisputedly shows that Daniel has been living in Nebraska since the summer of 2000. Nebraska is Daniel's "home state," and the Custer County District Court had jurisdiction over the custody proceedings.

*Jurisdiction to Modify Child Support.*
 Keith asserts that the district court had no authority to modify the Wyoming child support order. Although Keith did not raise the issue of subject matter jurisdiction before the Nebraska district court, lack of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte. See *Paulsen v. Paulsen*, 11 Neb. App. 582, 658 N.W.2d 49 (2003). Initially, we observe that the NCCJA does not confer subject matter jurisdiction upon a Nebraska court to modify a child support order issued by another state. See § 43-1202 (for purposes of NCCJA, child custody determination shall not include decision relating to child support or any other monetary obligation of any person). See, also, *In re Marriage of Zinke*, 967 P.2d 210 (Colo. App. 1998) (Uniform Child Custody and Jurisdiction Act does not confer subject matter jurisdiction upon court to modify child support order issued in another state). Thus, we address the modification of the Wyoming child support order under the Uniform Interstate Family Support Act (UIFSA), Neb. Rev. Stat. §§ 42-701 to 42-751 (Reissue 2004).

> The general purpose of UIFSA is to unify state laws relating to the establishment, enforcement, and modification of child support orders. . . . The goal of UIFSA is to streamline and expedite interstate enforcement of support decrees and to eliminate the problems arising from multiple or conflicting support orders from various states by providing for one tribunal to have continuing and exclusive jurisdiction

to establish or modify a child support order. . . . UIFSA provides a system where only one child support order may be in effect at any one time. . . . UIFSA allows, under certain circumstances, a Nebraska court to enforce or modify a support order issued in another state or to establish a support order on behalf of a nonresident of this state when a Nebraska court has jurisdiction over the person obligated to pay support. . . . However, UIFSA does not create an independent duty of support. The purpose of UIFSA in regard to child support is to enforce or establish a child support order against someone who has a duty to pay support or to modify an existing child support order when interstate aspects are involved. . . . UIFSA's provisions may only be used to enforce an existing support order, establish a support order where no order has previously been established, or modify an existing support order.

(Citations omitted.) *Hamilton v. Foster*, 260 Neb. 887, 899-900, 620 N.W.2d 103, 114 (2000).

 Section 42-746 provides in part that "upon petition[,] a tribunal of this state may modify a child support order issued in another state which is registered in this state, if after notice and hearing" the tribunal finds that (1) neither the child nor the individual obligee nor the obligor resides in the issuing state, a petitioner who is a nonresident of Nebraska seeks modification, and the respondent is subject to the personal jurisdiction of the Nebraska district court or (2) Nebraska is the state of residence of the child, or a party who is an individual is subject to the personal jurisdiction of the Nebraska district court, and all of the parties who are individuals have filed consents in a record in the issuing tribunal for the Nebraska district court to modify the support order and assume continuing exclusive jurisdiction.

 It is clear that under § 42-746, the first predicate for a Nebraska court to have subject matter jurisdiction to modify another state's child support order is registration in Nebraska of such order—in this case, the Wyoming child support order. Section 42-744 provides that a party seeking to modify a child support order issued in another state shall register that order in Nebraska in accordance with §§ 42-736 to 42-739 if the order has not been previously registered. Section 42-737 provides:

(a) A support order . . . may be registered in this state by sending the following documents and information to the appropriate [district court] in this state:

(1) a letter of transmittal to the tribunal requesting registration and enforcement;

(2) two copies, including one certified copy, of the order to be registered, including any modification of the order;

(3) a sworn statement by the person requesting registration or a certified statement by the custodian of the records showing the amount of any arrearage;

(4) the name of the obligor and, if known:

(i) the obligor's address and social security number;

(ii) the name and address of the obligor's employer or other payor and any other source of income of the obligor; and

(iii) a description and the location of property of the obligor in this state not exempt from execution; and

(5) except as otherwise provided in section 42-725, the name and address of the obligee and, if applicable, the person to whom support payments are to be remitted.

(b) On receipt of a request for registration, the registering tribunal shall cause the order to be filed as a foreign judgment, together with one copy of the documents and information, regardless of their form.

(c) A petition or comparable pleading seeking a remedy that must be affirmatively sought under other law of this state may be filed at the same time as the request for registration or later. The pleading shall specify the grounds for the remedy sought.

Substantial compliance with the registration requirements is expected. See, *Twaddell v. Anderson*, 136 N.C. App. 56, 523 S.E.2d 710 (1999); *In re Interest of Chapman*, 973 S.W.2d 346 (Tex. App. 1998); Unif. Interstate Family Support Act § 602, comment, 9 U.L.A. 243 (2005). Failure to register an order as required under the act precludes a trial court from modifying the issuing state's child support order. See, *Auclair v. Bolderson*, 6 A.D.3d 892, 775 N.Y.S.2d 121 (2004) (petitioner failed to demonstrate that Florida judgment was registered in New York; this failure to prove registration prevented New York courts from

obtaining subject matter jurisdiction under both UIFSA and Full Faith and Credit for Child Support Orders Act to modify child support order from another state); *Rivera v. Ramsey County*, 615 N.W.2d 854 (Minn. App. 2000) (registration is prerequisite to modifying existing child support order issued in another state). See, also, *Jolly v. Jolly*, 130 S.W.3d 783 (Tenn. 2004) (failure to register Kansas divorce decree in Tennessee precluded Tennessee court, under UIFSA, from enforcing child support provisions in decree).

There is no evidence before us that the Wyoming child support order, issued as part of the 1995 modification decree, has been registered in Nebraska pursuant to § 42-737 or that Debbi has even sought registration of such order. The only evidence in the record that arguably suggests prior registration of the Wyoming child support order is a document from the Nebraska Department of Health and Human Services certifying a "true copy of the official record of support order payments, balances, and arrearages," which document shows that Debbi owes Keith $3,785.79 in past-due child support. Such a document makes it conceivable that the Wyoming order was registered under the Nebraska Uniform Enforcement of Foreign Judgments Act (UEFJA), Neb. Rev. Stat. § 25-1587.01 et seq. (Reissue 1995), which perhaps explains the generation of the document by the Nebraska Department of Health and Human Services. However, even if Keith or Debbi had previously registered the Wyoming order under the UEFJA, the law is clear that doing so does not confer subject matter jurisdiction on a Nebraska court to modify the foreign order with respect to payments to be made in the future. See *Marshall v. Marshall*, 240 Neb. 322, 482 N.W.2d 1 (1992) (trial court did not have subject matter jurisdiction to modify child support provisions of foreign divorce decree registered in state under UEFJA, and former wife's compliance with provisions of UEFJA did not invoke separate provisions of Revised Uniform Reciprocal Enforcement of Support Act). We note that the provisions of the Revised Uniform Reciprocal Enforcement of Support Act, Neb. Rev. Stat. §§ 42-762 to 42-7,105 (Reissue 1988 & Cum. Supp. 1992), were repealed by 1993 Neb. Laws, L.B. 500, § 61, and replaced by UIFSA, operative January 1, 1994, the statutes involved in the present case.

■ But, the lack of evidence of registration is only one reason why the Nebraska district court lacked subject matter jurisdiction. Section 42-746(a)(1) allows a district court to modify a registered child support order issued in another state when, among other requirements, the petitioner seeking modification is a nonresident of Nebraska. Debbi, who petitioned for modification, is clearly a resident of Nebraska. While the district court could have obtained subject matter jurisdiction under § 42-746(a)(2) if "all of the parties who are individuals ha[d] filed consents in a record in the issuing tribunal [Wyoming] for a tribunal of this state [Nebraska district court] to modify the support order and assume continuing, exclusive jurisdiction." However, there is no evidence of any such consents by Keith and Debbi in our record.

Therefore, the Custer County District Court was without subject matter jurisdiction to modify the child support order issued by the Wyoming court. We reverse and vacate the Custer County District Court's order concerning child support.

### Custody of Daniel.

■ Keith asserts that the district court erred in granting Debbi custody of Daniel, because there was not a material change in circumstances, nor was it in Daniel's best interests. A party seeking to modify a child support order must show a material change of circumstances which occurred subsequent to the entry of the original decree or a previous modification and which was not contemplated when the prior order was entered. *Mace v. Mace*, 13 Neb. App. 896, 703 N.W.2d 624 (2005). The party must also show that a change in custody is in the child's best interests.

In the record, the report of the district court commissioner from the Wyoming district court includes a "Basis for Findings and Recommendations" section which provides the reasons the Wyoming court granted Keith custody of the children in 1995, the order that Debbi seeks to modify. The Wyoming court found that Debbi was "unwilling to foster" frequent and liberal contact between the children and Keith. The court stated that Debbi's conduct in involving the children in her "struggle to either keep [Keith] or at least to eliminate any other relationships he may

develop" was inappropriate. The court found that Debbi was a full-time student with no income other than child support and student loans or grants and that Keith was an airline pilot who earned "sufficient income" to support the children. The court found that Debbi did not show stability because she was unemployed and had changed her major after 3 years of school. The Wyoming court concluded that it was in the best interests of the children to live with Keith.

At the time of the August 31, 2004, trial in the Custer County District Court, Debbi had moved to Nebraska, obtained employment, and gotten married, all of which were a change in circumstances from the time of the 1995 modification decree. As for Keith's life since the 1995 modification decree, he has been charged on two different occasions with domestic assault, has been married twice, and has gotten divorced twice. He also has filed for bankruptcy, which proceeding has not been discharged, and is paying child support for three children resulting from the marriage with Michelle. We find that these changes to Debbi's and to Keith's lives clearly constitute a material change in circumstances.

We now turn to whether a change in custody is in Daniel's best interests. Daniel testified at the modification hearing that he "feel[s] very comfortable with both parents" and that he "kinda ha[s] mixed feelings" about living with Debbi for the reason that he does not want to have to decide between his two parents, because he is afraid he is "eventually going to hurt one person." Daniel has been doing well in his current school in Nebraska. The guardian ad litem stated in her report that according to school reports, Daniel was "very withdrawn and under socialized" when he entered school in Nebraska. However, 2 years later, he was "very well adjusted and his socialization skills were much improved." At the time of trial, Daniel had lived in Nebraska with Debbi for 4 years, and he had initially wanted to live with her because he had "troubles" with Michelle, Keith's third wife.

From this record, and we have purposefully omitted from this opinion a number of salacious details, we have no illusions that either parent offers a perfect environment for Daniel. Debbi's husband is a "practicing alcoholic," and she testified that she is

"stuck" in the marriage "for financial stability." Debbi works about 17 hours per week at $8 per hour. However, Debbi has provided for Daniel for 4 years without any child support from Keith. Keith has been divorced a total of three times and is now cohabitating with his latest girl friend. Keith has been involved in two instances of domestic assault and has filed for bankruptcy, despite earning a salary of over $135,000 in 2003. Keith pilots international flights and, according to his testimony, is home between 15 and 25 days each month.

The guardian ad litem recommended that Debbi be granted custody of Daniel, finding that the guardian ad litem's paramount concern is Daniel's best interests and that Debbi "would place the best interest of [Daniel] as her primary goal." The guardian ad litem stated that her only concern about Debbi is her husband. The guardian ad litem opined that Keith's occupation provides an unpredictable schedule, that he lacks stability in regard to his relationships with the opposite sex, and that he has a criminal history relating to domestic abuse. Based on the record, the Nebraska district court did not abuse its discretion in determining that granting Debbi custody of Daniel was in Daniel's best interests.

## CONCLUSION

The Nebraska district court had jurisdiction over the custody matter and did not err in granting Debbi custody of Daniel. However, that court did not have subject matter jurisdiction over the issue of child support. Therefore, we affirm the Nebraska district court's order concerning child custody, but we reverse and vacate the district court's order requiring Keith to pay child support.

AFFIRMED IN PART, AND IN PART
REVERSED AND VACATED.