Carmen Yolanda Berrios RIVERA,
petitioner, Respondent,

and

Angel Louis Montanez–Torres,
Respondent,

v.

RAMSEY COUNTY, Appellant,

New York City Law Department,
Respondent.

No. C4–00–99.

Court of Appeals of Minnesota.

Aug. 7, 2000.

Carmen Yolanda Berrios Rivera, Jackson Heights, N.Y. (pro se respondent).

Robin Dietz–Mayfield, St. Paul (for respondent Montanez–Torres).

Susan Gaertner, Ramsey County Attorney, Vance B. Grannis III, Special Assistant Ramsey County Attorney, Hastings (for appellant).

New York City Law Department, Office of Corporation Counsel, Family Court Division, Interstate Child Support Unit, New York, N.Y. (respondent).

Considered and decided by RANDALL, Presiding Judge, LANSING, Judge, and WILLIS, Judge.

## OPINION

WILLIS, Judge

Appellant Ramsey County argues that the district court erred by denying the county's motion to establish a child-support obligation for respondent Angel Louis Montanez–Torres under Minn.Stat. § 256.87, subd. 5 (1998). We affirm.

## FACTS

The 13–year marriage of respondents Carmen Yolanda Berrios Rivera and Angel Louis Montanez–Torres was dissolved on October 5, 1987, by an order of the superior court of Puerto Rico. The order incorporated the parties' agreement that they would share legal custody of their three

children, A.M.B., born in 1975; M.A.M.B., born in 1977; and M.Y.M.B., born in 1984; and that Rivera would have physical custody of the children. Montanez–Torres was ordered to pay child support of $1,300 per month through January 1988 and $1,000 per month thereafter.

In August 1993, Rivera and Montanez–Torres jointly moved the superior court to modify the dissolution order by "staying" Montanez–Torres's child-support obligation because he had been diagnosed with cancer. The parties agreed that Montanez–Torres would close his Puerto Rican law practice and undergo experimental cancer treatment at the Mayo Clinic in Rochester, Minnesota; that Rivera and M.Y.M.B. would move to New York City; that A.M.B., then age 18, would move to Minnesota to attend St. Cloud State University; and that M.A.M.B. would stay in Puerto Rico with his grandfather, who would have shared physical custody. On October 13, 1993, the court modified the dissolution order as requested by the parties.

In September 1997, appellant Ramsey County notified Montanez–Torres that a child-support enforcement agency of the State of New York had requested that the county enforce the 1987 Puerto Rican child-support order. The county alleged that Montanez–Torres owed child-support arrears of $42,800 and was subject to automatic income withholding. Montanez–Torres contested the county's proposed action and a hearing was held before an administrative law judge ("ALJ") in October 1997. Neither Rivera nor the county appeared. The ALJ found that the county erroneously told Montanez–Torres that he was obligated to register the Puerto Rican orders to contest its action and that Ramsey County had not registered either order as required under Minn.Stat. ch. 518C (1996). The ALJ dismissed Ramsey County's action without prejudice.

In May 1998, at Rivera's request, the Queens County Support Collection Unit in New York asked Ramsey County to seek a child-support order and medical-coverage order for M.Y.M.B. In December 1998, the county initiated an action against Montanez–Torres in Dakota County district court. The court transferred the matter to Ramsey County district court.

In April 1999, the county moved the Ramsey County district court to establish an ongoing child-support obligation and a past-support obligation commencing two years before the date of service pursuant to Minn.Stat. § 256.87, subd. 5 (1998), ongoing and past child-care cost payments, and health and dental support.

The district court denied the county's motion, finding that the county was obligated to proceed under Minn.Stat. ch. 518C (1998) and that "there is no reason for this [c]ourt to establish another child-support order under Minn.Stat. § 256.87, subd. 5, when there is already a valid way of enforcing the Puerto Rican dissolution decree." The county appeals.

## ISSUES

1. Does the county have standing to appeal?

2. Is the county required to seek modification of the Puerto Rican orders to establish a child-support obligation for Montanez–Torres?

## ANALYSIS

### I. Standing on Appeal

Montanez–Torres argues that because the county has never "provided public benefits" to Rivera the county does not have standing to appeal independently of Rivera, who does not appeal from the district court's order. An appellant must have standing for this court to exercise jurisdiction. *State by McClure v. Sports and Health Club, Inc.*, 370 N.W.2d 844, 850 (Minn.1985); *In re Custody of E.A.Q.D. and T.L.D.*, 405 N.W.2d 262, 264 (Minn.App.1987); *cf. Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992) (stating

that plaintiff must have standing for federal courts to exercise jurisdiction under U.S. Const. art. III).

■ The county argues that the district court erred in denying its motion to establish a child-support obligation for Montanez–Torres under Minn.Stat. § 256.87, subd. 5 (1998). "[T]he fundamental aspect of standing is that it *focuses on the party* seeking to get his complaint before a * * * court and *not on the issues* he wishes to have adjudicated." *Sundberg v. Abbott*, 423 N.W.2d 686, 688 (Minn.App. 1988) (quoting *Flast v. Cohen*, 392 U.S. 83, 99, 88 S.Ct. 1942, 1952, 20 L.Ed.2d 947 (1968) (emphasis added)), *review denied* (Minn. June 29, 1988). Thus, in addressing whether the county has standing to appeal, the question is not whether the county could properly seek to establish a child-support obligation for Montanez–Torres under section 256.87, subdivision 5. Rather, we must determine whether the county "has a sufficient stake in a justiciable controversy to seek relief." *Leffler v. Leffler*, 602 N.W.2d 420, 422 (Minn.App. 1999) (citation omitted). A justiciable controversy exists where there is a "genuine conflict in the tangible interests of opposing litigants." *Id.* (quoting *Izaak Walton League of Am. Endowment, Inc. v. State, Dep't of Natural Resources*, 312 Minn. 587, 589, 252 N.W.2d 852, 854 (1977)). And standing may be conferred on a party by statute. *In re Objections & Defenses to Real Property Taxes*, 410 N.W.2d 321, 322 (Minn.1987).

Section 256.87, subdivision 5, provides that a court is to order child-support "under chapter 518." Chapter 518 provides that

> [p]ublic authorities responsible for child support enforcement may act on behalf of other public authorities responsible for child support enforcement. This includes the authority to represent the legal interest of * * * the other public authority.

Minn.Stat. § 518.551, subd. 1(b) (1998); *cf. Krogstad v. Krogstad*, 388 N.W.2d 376, 384

(Minn.App.1986) (holding that a "county attorney is authorized to represent a custodial parent" in child-support matters "even if the parent is not a recipient of public assistance" (citations omitted)). Here, the county seeks to establish a child-support obligation under section 256.87, subdivision 5, on behalf of the Queens County Support Collection Unit. Thus, we conclude that the county is invested by statute with a sufficient stake in these proceedings, in which there is a genuine conflict in the tangible interests of the county and Montanez–Torres, to have standing to appeal the district court's order.

## II. Denial of the County's Motion

■ The county argues that the district court erred in denying the county's motion to establish Montanez–Torres's child-support obligation under section 256.87, subdivision 5, and instead requiring it to seek a child-support order under chapter 518C. Section 256.87, subdivision 5, provides that a

> person or entity having physical custody of a dependant child not receiving public assistance * * * has a cause of action for child support against the child's noncustodial parents. Upon a motion served on the noncustodial parent, the court shall order child support payments, including medical support and child care support, from the noncustodial parent.

Chapter 518C, Minnesota's codification of the Uniform Interstate Family Support Act, sets forth the procedures for the recognition, enforcement, and modification of child-support orders issued by the courts of other states.

■ Montanez–Torres argues that the county's motion to establish a child-support obligation under section 256.87, subdivision 5, rather than to modify the Puerto Rican orders under chapter 518C, violates the federal Full Faith and Credit for Child Support Orders Act, 28 U.S.C. § 1738B

(1994 & Supp. IV 1998). Statutory construction is a question of law, which we review de novo. *Kasdan v. Berney,* 587 N.W.2d 319, 321 (Minn.App.1999).

Section 1738B provides that when a state's court has issued a child-support order "made consistently" with section 1738B, the authorities of another state "shall not seek or make a modification" of that order except in accordance with section 1738B. 28 U.S.C. § 1738B(a) (1994).[1] A child-support order is "made consistently" with section 1738B if the order was made pursuant to the laws of the state of the issuing court, the court had subject-matter jurisdiction, and the court had personal jurisdiction over the parties. *Id.* (c).[2] Any order that would affect the amount, scope, or duration of a previous child-support order and "modifies, replaces, supersedes, or otherwise is made subsequent to" a previous child-support order is a "modification" under section 1738B. *Id.* (b).

It is clear that the 1993 order was issued pursuant to the laws of Puerto Rico by a Puerto Rican superior court with both subject-matter jurisdiction and personal jurisdiction over the parties, who were residents of Puerto Rico and jointly moved the superior court to issue the order. *See* P.R. Laws Ann. tit. 8, § 513 (1990) (providing that parties may submit child-support agreement to superior court for approval). And the county, by requesting that the district court establish a child-support obligation of $467.80 per month, seeks an order that would affect the amount of Montanez–Torres's child-support obligation established in the 1993 order and that would replace and supersede that order. Thus, the 1993 Puerto Rican child-support order was made consistently with section 1738B, and the county seeks modification of that order.

But the county argues that it is not required to seek modification of the order in accordance with section 1738B because Puerto Rico no longer has continuing, exclusive jurisdiction. This contention is clearly without merit. The county correctly asserts that a Minnesota court may modify the Puerto Rican order because Puerto Rico is no longer M.Y.M.B.'s, Rivera's, or Montanez–Torres's state of residence and thus Puerto Rico no longer has continuing, exclusive jurisdiction. *See* § 1738B(d), (e) (Supp. IV 1998). But that does not mean that the Puerto Rican order is not entitled to full faith and credit under section 1738B. Rather, if neither of the parents nor the child reside in the state that issued an existing child-support order, a court in another state may modify the obligor's child-support obligation only if the party seeking modification has registered the order in the second state and the court in which modification is sought has jurisdiction over the non-moving party. *Id.* (e), (i); *see id.* (d).[3] Thus, the county is required to register the 1993 order before seeking to modify Montanez–Torres's child-support obligation.[4]

**1.** The Commonwealth of Puerto Rico is a "State" under section 1738B. § 1738B(b) (1994).

**2.** A child-support order must also be issued "pursuant" to sections 1738B(e), (f), and (g), to be made consistently with section 1738B. 28 U.S.C. § 1738B(c)(1) (Supp. IV 1998). But because there was no preexisting child-support order from a jurisdiction other than Puerto Rico issued before the 1987 and 1993 orders, those subsections of section 1738B are not applicable to our analysis here. *See id.* (e) (discussing modification of child-support orders issued by another state's court), (f) (discussing recognition of child-support orders from separate jurisdictions), (g) (Supp. IV 1998) (discussing enforcement of modified orders by court of a state that no longer has continuing, exclusive jurisdiction of previous order).

**3.** Section 1738B does not contain a definition of "register" or a required registration procedure. But Minnesota's chapter 518C sets forth the procedure to register a child-support order issued by another state for the purpose of modification or enforcement. Minn.Stat. § 518C.609 (1998) (registration for modification); Minn.Stat. §§ 518C.601–.604 (1998) (registration for enforcement).

**4.** The county concedes that it has failed to register either the October 1987 or the October 1993 order.

The county argues that regardless of its obligations under section 1738B, it may still seek to establish a child-support obligation for Montanez–Torres under section 256.87, subdivision 5. But Minn.Stat. § 518C.603(c) provides that

[e]xcept as otherwise provided in this chapter [518C], a tribunal of this state shall recognize and enforce, but may not modify, a registered [support or income-withholding] order if the issuing tribunal had jurisdiction.

*See generally* Minn.Stat. §§ 518C.609–.614 (1998) (discussing registration and modification of foreign child-support orders). And an order that must be registered under section 1738B must be issued by a court with both subject-matter jurisdiction and personal jurisdiction over the parties. § 1738B(c), (i) (1994 & Supp. IV 1998). Thus, we conclude that when, as here, a party seeks to modify an obligor's child-support obligation established by a foreign child-support order that 28 U.S.C. § 1738B requires to be registered, the party seeking modification may do so only as provided in chapter 518C.

The county alleges that because Montanez–Torres's child-support obligation was "stayed" in the 1993 order, the order is not a child-support order, and, therefore, the county is not required to modify Montanez–Torres's child-support obligation under chapter 518C. *See generally Mulroy v. Mulroy,* 354 N.W.2d 66, 69 (Minn.App. 1984) (stating that where district court reserves issue of child support in dissolution decree, when party later seeks child support, court must proceed as if determining initial child-support obligation). But when a court considers the financial resources and needs of both parents and orders that the non-custodial parent has no child-support obligation, the order is not a reservation of the issue of child support. *Englund v. Englund,* 352

N.W.2d 800, 803 (Minn.App.1984); *see Mulroy,* 354 N.W.2d at 69.

The superior court's 1993 order "stayed" Montanez–Torres's child-support obligation upon Rivera and Montanez–Torres's joint motion because Montanez–Torres would no longer be able financially to provide support and Rivera would be moving to New York City to take a job. Thus, the 1993 order established that Montanez–Torres has no child-support obligation on the basis of the parents' financial resources and did not, therefore, reserve the issue.

Because the county was obligated under section 1738B to register the 1993 order before seeking to modify Montanez–Torres's child-support obligation, we conclude that the county may seek modification of his child-support obligation only under chapter 518C. The district court did not err in concluding that the county could not proceed under section 256.87, subdivision 5.

In November 1997, the ALJ put the county on notice of its obligation to register the Puerto Rican court's orders and dismissed the county's action without prejudice.[5] But instead of registering the 1993 Puerto Rican order, the county chose to proceed in its April 1999 motion as if the order, of which the county is clearly aware, does not exist. Congress established the registration requirement of section 1738B specifically because of the failure of state authorities and courts to give full faith and credit to the child-support proceedings of other jurisdictions. *See* Full Faith and Credit for Child Support Orders Act, Pub.L. No. 103–383, § 2(a)(4)(A), 108 Stat. 4063, 4064 (1994). And the Minnesota legislature enacted chapter 518C to "unify state laws relating to the establishment, enforcement, and modification of child support orders." *Kasdan,* 587 N.W.2d at 322. By not registering the Puerto Rican order and not seeking to modify that order as provided in chapter 518C, the county has

---

**5.** In the 1997 proceeding, the county sought to enforce the 1987 order and did not ac-

knowledge the 1993 order.

attempted to circumvent the intent of both Congress and the Minnesota legislature and to have this state's courts ignore the full faith and credit owed under both federal and Minnesota law to the judicial proceedings of a co-equal United States jurisdiction. This the county cannot do.

## DECISION

Ramsey County has standing to appeal the district court's November 1999 order. But to establish a child-support obligation for Montanez–Torres, the county is required by 28 U.S.C. § 1738B (1994 & Supp. IV 1998) to register the October 1993 order issued by the superior court of Puerto Rico and thus must seek modification of that order under Minn.Stat. ch. 518C (1998).

**Affirmed.**