No. 56,898

John H. Hart, *Appellee*, v. Linda K. Hart (now Neufeld), *Appellant*.

(695 P 2d 1285)

Opinion filed March 2, 1985.

*Alan C. Goering,* of Medicine Lodge, argued the cause and was on the brief for the appellant.

No appearance by appellee.

The opinion of the court was delivered by

Herd, J.: This is a domestic relations controversy. The appeal is from an order changing the custody of Bethany Hart from Linda Hart (now Neufeld), her mother, to John Hart, her father.

John and Linda Hart were married on July 7, 1977. On July 1, 1978, Bethany Lynn Hart was born to them. At that time the Harts lived in Medicine Lodge.

John and Linda Hart became estranged and John filed for divorce in March, 1981. At the time, John was a resident of Anthony, and Linda and Bethany were residents of Newton. Linda was granted custody of Bethany with John having rights of visitation. After the divorce, John married Evon, his current wife, and adopted her daughter, Brook. John and Evon Hart lived in Anthony for nine months; moved to Winfield for two months; then to Ponca City, Oklahoma for two years. Since August, 1983, they have lived in Rawlins, Wyoming.

Linda and Bethany moved from Newton to Rifle, Colorado, in October, 1982, where they currently reside. Upon moving to Colorado, Linda married Henry Neufeld. Also living with Linda, Bethany, and Henry is Opal Sowards, Linda's mother.

Visitation rights have been modified several times since the divorce, although John had no difficulty visiting Bethany.

At Thanksgiving time, 1983, John called Linda to discuss Bethany's Thanksgiving visitation. John informed Linda that he and Evon were separated and he was involved with another woman named Debbie. Linda said she did not want Bethany exposed to such a relationship and told John he could not have Bethany for Thanksgiving unless Evon was present. John later reported that he and Evon had reconciled and would come and get Bethany for Thanksgiving. This satisfied Linda and the Thanksgiving visitation occurred without problems.

Linda did not hear from John regarding the Christmas visitation until December 23. The visitation order allowed him to have Bethany for the school Christmas vacation period, not to exceed fourteen days. Bethany got out of school December 16. Linda attempted to contact John by telephone but his phone had been disconnected. On December 23 he called and said he was sending Evon, Brook and Bethany to Kansas for Christmas while he worked in Wyoming. Linda told him she felt the visitation was personal to him and if he was not going to exercise his right for himself, he could not take her. John told Linda to have Bethany ready when he arrived Christmas Eve. She told him she would not be home.

On Christmas Eve day, Linda, Henry, Opal and Bethany drove to Glenwood Springs, Colorado, to spend the night in a motel. They attended church in Glenwood Springs and went there both to avoid John and to make sure they would be able to attend church Christmas morning, since there was a snowstorm predicted.

John, Evon and Brook arrived in Rifle on Christmas Eve to find no one home. They spent the night. The next day they proceeded to drive toward Denver where John was to deliver Evon and Brook to the airport to fly to Kansas. As they passed through Glenwood Springs, they saw Henry in his car at a motel. John stopped. What happened then is disputed. All the witnesses agreed that John, Evon and Brook went to the motel room to see Bethany and to take her Christmas presents to her. They visited for awhile. An argument then ensued among Evon, Linda and Opal. John, Evon, Brook and Bethany then went to the lobby of the motel to visit. Evon suggested John just take Bethany since

he had the right under the visitation agreement. Evon and Brook went to the car. John and Bethany went back to the motel room where John told Linda he was taking Bethany. She asked him not to since she had packed no clothes for her. John said he was taking her anyway. Linda then claims John hit her, grabbed Bethany and ran to the car. John claims he did not hit Linda, but admits he wrestled Bethany from Linda's arms and took her with him without a coat or other belongings. John, Evon, Brook and Bethany then left heading toward Denver.

Henry Neufeld instantly called the police and reported the domestic disturbance. The police stopped John's vehicle and arrested him. John was formally charged with making a loud noise in public, a misdemeanor. He entered a diversion program.

This gave rise to John's filing a motion in the Harper County, Kansas district court for a change of custody. Linda filed a motion to relinquish jurisdiction under the Uniform Child Custody Jurisdiction Act (UCCJA). The court overruled the motion, finding there were significant family ties in Kansas warranting the exercise of jurisdiction by a Kansas court. At trial, John, Evon and John's mother all testified on his behalf. Linda, Henry, and Opal testified on Linda's behalf. Additionally, Linda placed into evidence depositions of their church minister, Bethany's teacher, a psychologist and a consultant specializing in children and family, who had completed a home study and evaluation of Bethany.

At the conclusion of the hearing, the trial court ordered Bethany immediately transferred to John and granted Linda three weeks visitation in the summer and alternate holidays. The court also granted John judgment for his attorney fees incurred in defending himself on the criminal charges in Colorado stemming from the Christmas 1983 incident. Linda refused to comply with the court's order. This court granted a stay after a stay was denied by the trial court. Proceedings have been initiated in Colorado under the UCCJA. The Colorado district court held Kansas was without jurisdiction to hear the matter and granted a stay pending this appeal.

The first issue raised by appellant is that the trial court erred in determining it had jurisdiction over this case under the UCCJA, K.S.A. 38-1301 *et seq.*

The trial court held it would not relinquish jurisdiction of this case to Colorado, the home of the mother and Bethany, because

Kansas was not an inconvenient forum since Bethany's paternal grandparents, paternal aunt and uncle, paternal great aunt, paternal great grandmother, cousins and various relatives of Bethany's stepmother, Evon Hart, live in Kansas.

K.S.A. 1984 Supp. 38-1303 states a Kansas court may assert jurisdiction over child custody modifications when:

"(1) This state (A) is the home state of the child at the time of commencement of the proceeding, or (B) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of the child's removal or retention by a person claiming the child's custody or for other reasons, and a parent or person acting as parent continues to live in this state; or

"(2) it is in the best interest of the child that a court of this state assume jurisdiction because (A) the child and the child's parents, or the child and at least one contestant, have a significant connection with this state, and (B) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships; or

"(3) the child is physically present in this state and (A) the child has been abandoned or (B) it is necessary in an emergency to protect the child because the child has been subjected to or threatened with mistreatment or abuse or is otherwise a child in need of care; or

"(4)(A) it appears that no other state would have jurisdiction under prerequisites substantially in accordance with paragraphs (1), (2), or (3), or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (B) it is in the best interest of the child that this court assume jurisdiction."

In *Bills v. Murdock*, 232 Kan. 237, 654 P.2d 406 (1982), we construed the UCCJA in a situation quite similar to that presented here. Writing for the majority, Justice Miller noted the purpose of the act is to limit jurisdiction, rather than to expand it. We held there must be maximum, rather than minimum, contact with the state. This is consistent with the purposes of the act, also broadly discussed in *Bills*, to see that custody decrees are rendered in the state which can best decide the case in the interest of the child.

In *Bills*, the father and mother were divorced in Wyoming. The father moved to Kansas and the mother, who was the custodial parent, moved to Texas, where she resided with the child for three years prior to the motion to change custody. After the child's two-month summer visit with the father in Kansas, the father filed an action in Kansas for change of custody. The trial court changed custody to the father, holding that Wyoming had no jurisdiction, but both Kansas and Texas did. This court re-

versed, holding Texas, not Kansas, was the home state of the child and the facts were insufficient to give Kansas jurisdiction. This court concluded:

"[A] child who resides with his or her custodial parent in a sister state and who occasionally visits a parent who lives in Kansas, does not have a 'significant connection' with this state sufficient to establish jurisdiction under K.S.A. 38-1303(a)(2). To hold otherwise would be to widen the jurisdiction of trial courts under the act, while the purpose of the act is obviously to narrow the jurisdiction and to require child custody litigation, if at all possible, to be held where the child resides." 232 Kan. at 243.

See also 2 Elrod, Kansas Family Law Handbook, p. 12-10 (1983).

In *Larsen v. Larsen*, 5 Kan. App. 2d 284, 615 P.2d 806 *rev. denied* 228 Kan. 807 (1980), the Court of Appeals held Kansas properly exercised jurisdiction over a custody matter even though the children lived in another state. The facts of *Larsen* are distinguishable from this case. There, one parent remained at all times a resident of Kansas and the children regularly visited in Kansas during the summers. Here there were no long summer visits in Kansas, neither parent lived in Kansas and Kansas was home to Bethany for only a short period of her life. In *Guye v. Guye*, 8 Kan. App. 2d 219, 654 P.2d 482 (1982), the child and mother resided in Kansas for more than six months prior to the filing of the custody action. Thus, the Court of Appeals held Kansas was the home state of the child under the UCCJA. Here, neither parent nor Bethany resided in Kansas six months prior to the action.

The trial judge, in taking jurisdiction of this case and changing the custody of Bethany Hart from her mother to her father, obviously became so indignant about the arrest of John Hart that he forgot his principal concern in custody cases is the welfare of the child, not that of punishing what he considered an intransigent parent.

Let us consider each ground of K.S.A. 1984 Supp. 38-1303 to determine if the court in this case properly asserted jurisdiction. First, this is not now the home state of the child nor was it six months prior. Rather, Colorado is the child's home state, and neither of the parents live in Kansas. John Hart's home is in Wyoming and Linda Neufeld lives in Colorado.

Secondly, let us examine whether it is in the child's best

interest for Kansas to assume jurisdiction on the basis of the child and at least one parent having a significant connection with the state. The child's paternal grandparents, paternal aunt and uncle, paternal great aunt, paternal great grandmother, cousins and various relatives of Evon Hart live in Kansas. Thus, John Hart has significant connections to the state. As for Bethany, however, the significance of the connections are minimal. Bethany saw her paternal grandparents once in January 1983; for forty-five minutes at Easter 1983; and for four-and-a-half hours in Oklahoma in August 1983. The paternal grandparents called her twice and were able to talk to her one of those times. They have never contacted Linda Neufeld to arrange a visit with Bethany. Thus, Bethany's connections with Kansas are insignificant.

The statute states, however, in addition to the significant connections there must be *substantial* evidence in the state concerning the child's present or future care, protection, training and personal relationships. This does not exist. Bethany has seen her paternal grandparents three times in a year, two of which were extremely short visits. It is not alleged that she has ever seen her other Kansas relatives since she left the state in 1982. If John Hart is awarded custody of Bethany, she will live in Wyoming not in Kansas. Linda Neufeld submitted depositions of four Colorado individuals: Bethany's church minister, a psychologist, Bethany's teacher, and a consultant specializing in children and families. The only Kansas witness was Bethany's paternal grandmother. The evidence "available in this state" as to Bethany's present and future care is not substantial. Rather, Colorado is the source of substantial information as to these factors.

The next jurisdictional consideration is whether the child is physically present in the state and whether there are emergency circumstances or the child has been abandoned. None of these apply in this case.

The final consideration is whether it appears no other state would have jurisdiction under the prerequisites of the act. No state had declined jurisdiction. Proceedings have been initiated in Colorado and the Colorado court held Kansas was without jurisdiction to hear the matter and issued a stay pending the outcome in this case.

We have no hesitation in concluding Colorado has jurisdiction

of this case pursuant to K.S.A. 1984 Supp. 38-1303(a)(1) and (2). Thus, the trial court lacked jurisdiction to order change of custody and award attorney fees. Those orders are set aside.

The judgment of the trial court is reversed and this case is remanded with instructions to dismiss and relinquish jurisdiction to the State of Colorado.