PIKE LEE OSBORNE, APPELLEE, V. ANGIE STANFIELD, APPELLANT.
586 N.W. 2d 670

Filed November 17, 1998. No. A-98-144.

Jay B. Judds, of Lauritsen, Brownell, Brostrom, Stehlik & Thayer, for appellant.

Mark J. Young, of Anderson, Vipperman, Kovanda, Wetzel & Young, for appellee.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

SIEVERS, Judge.

## INTRODUCTION

This opinion addresses the consequences of a district court order which would have relinquished jurisdiction to the South Dakota courts upon the satisfaction of two conditions, neither of which occurred. Ultimately, we address the propriety of the Nebraska district court's decision to retain jurisdiction of the matter under the Nebraska Child Custody Jurisdiction Act (NCCJA), Neb. Rev. Stat. §§ 43-1201 through 43-1225 (Reissue 1993 & Cum. Supp. 1996).

## BACKGROUND

On July 17, 1997, Pike Lee Osborne (Osborne) filed a paternity petition in the district court for Adams County, Nebraska, alleging that he was the biological father of Kyley Miles Osborne, born October 18, 1996. The petition also alleged that Angie Stanfield (Stanfield) was Kyley's natural mother and that Osborne and Stanfield had never been married to one another. Osborne prayed that the court enter an order determining him to be Kyley's natural father and that he be awarded custody. In an ex parte temporary custody order filed the same day, Osborne was awarded temporary custody of Kyley, who was 9 months old at the time.

On July 29, 1997, Stanfield filed a special appearance, objecting to the court's subject matter jurisdiction under the NCCJA. Stanfield alleged that jurisdiction in Nebraska was improper because South Dakota was Kyley's home state. On August 22, 1997, evidence and argument were submitted to the district court by both parties in the form of affidavits and briefs of counsel on the special appearance. Attached to Stanfield's affidavit, as exhibit A, was a copy of a complaint filed by Stanfield in the district court for Spink County, South Dakota, against Osborne. Stanfield requested custody of Kyley as well as child support from Osborne in the complaint.

In a journal entry filed September 16, 1997, the district court stated:

> [N]either Nebraska [n]or South Dakota is the home state of the child. The Court finds South Dakota to be a more appropriate forum due to the number of witnesses from that state. The Court will retain jurisdiction of this matter until South Dakota accepts jurisdiction over the matter on the conditions listed.herein.
>
> The Court further finds that, based on the evidence received, neither party is a fit candidate for temporary custody of said minor child, and therefore places custody of the minor child with this court until a determination can be made that South Dakota will accept jurisdiction.
>
> This court will relinquish jurisdiction and custody of said minor child upon receipt of an appropriate order from the South Dakota Court: 1) accepting jurisdiction of the case, and 2) placing the minor child in an appropriate foster home or other suitable placement other than that of [Stanfield].

Osborne filed a motion for reconsideration on September 22, 1997, on the issue of parental fitness. Osborne alleged in the motion (1) that there was insufficient evidence for the court to "make a finding that [Osborne] is unfit" to have custody of Kyley and (2) that there existed no need to remove Kyley from his care. Stanfield filed a reply to the motion, arguing that Osborne had not been determined to be Kyley's biological father and, thus, that he had no standing to assert any claim to temporary custody. In his response to Stanfield's reply, Osborne stated:

> [T]he sole issue pending before the Court on [Osborne's] Motion for Reconsideration is the fitness of [Osborne] to have the temporary care, custody and control of the minor daughter until such time as the appropriate Court in South Dakota either accepts jurisdiction or denies the same, returning this matter to Nebraska.

In a journal entry and order filed October 30, 1997, the district court overruled the motion for reconsideration and ordered, "[I]f South Dakota has not accepted jurisdiction under the conditions stated in the order of September 16, 1997, by November 7, 1997 . . . jurisdiction shall remain in Adams County, Nebraska, until final hearing."

As far as the record reveals, nothing further happened in Nebraska until December 24, 1997, when Osborne filed a "Motion to Retain Jurisdiction," which alleged, in pertinent part:

> That as of December 23, 1997, the South Dakota Court has not yet assumed jurisdiction and a hearing has been set for January 23, 1998, to determine if South Dakota is the appropriate forum for hearing this matter.
>
> . . . .
> . . . That the child has been in Nebraska for approximately nine months. Those individuals who will have meaningful testimony concerning the child and the relationship of the parents to the child are in Nebraska. . . .
>
> . . . That there exist virtually no contacts between the child of the parties and the [S]tate of South Dakota. . . .
>
> WHEREFORE, [Osborne] prays that the Court retain jurisdiction . . . .

A hearing was held on the motion to retain jurisdiction on January 8, 1998. On January 22, the trial court ruled that the court would retain jurisdiction of the case. In its journal entry and order, the court stated in part:

> Originally this Court found neither South Dakota [n]or Nebraska to be the home state of the child but found South Dakota to be more appropriate due to the number of witnesses from that state. That order was entered on September 16, 1997. South Dakota did not accept jurisdiction until December 24, 1997, based on an ex parte affidavit from [Stanfield's] South Dakota counsel.
>
> The Court finds there has been a change in circumstances since the order of September 16, 1997. The child, age 15 months, has resided in Nebraska for 10 of those months.

The court determined that the requirements under § 43-1203(b), governing jurisdiction under the NCCJA, had been satisfied and found Nebraska to be the "more convenient" forum to hear the case. Stanfield filed her appeal to this court on February 19, 1998.

## ASSIGNMENTS OF ERROR

Stanfield argues that the district court erred as a matter of law (1) by allowing a second trial to take place after the time for fil-

ing a motion for new trial or appeal had expired and (2) by allowing a second trial to take place when the court no longer had subject matter jurisdiction. Stanfield also argues that the issue of jurisdiction "was Res Judicata."

## STANDARD OF REVIEW

■ The question as to whether jurisdiction existing under the NCCJA should be exercised is entrusted to the discretion of the trial court and is reviewed de novo on the record. As in other matters entrusted to the trial judge's discretion, absent an abuse of discretion, the decision will be upheld on appeal. *In re Interest of Floyd B.*, 254 Neb. 443, 577 N.W.2d 535 (1998).

## ANALYSIS

Stanfield argues that the January 8, 1998, hearing on Osborne's motion to retain jurisdiction, which she labels "a motion for new trial," brief for appellant at 12, should not have occurred, because the Nebraska court had previously determined, in an order filed September 16, 1997, that jurisdiction was appropriate in South Dakota.

■ Stanfield's contention that South Dakota has jurisdiction in this case implicates the NCCJA, which governs child custody disputes having interstate implications. Because the jurisdictional requirements of the NCCJA are applicable, we must determine whether the district court properly exercised its jurisdiction, because when an appeal is taken from a court which lacked jurisdiction, the appellate court acquires no jurisdiction. *In re Complaints of McLeod Telemanagement et al.*, 255 Neb. 202, 583 N.W.2d 39 (1998). In determining whether a court should entertain a child custody proceeding having interstate implications, the court should first determine whether it has jurisdiction and then determine whether it is appropriate to exercise that jurisdiction. *In re Interest of Floyd B., supra.*

We initially note that there had been no determination of Kyley's custody by another state. Thus, the district court was exercising initial jurisdiction over Kyley. The district court had jurisdiction to make a child custody determination by initial decree if one of the four following grounds of jurisdiction existed: (1) home state jurisdiction, (2) significant connection jurisdiction, (3) emergency jurisdiction, or (4) default jurisdic-

tion (when no other state would have jurisdiction or when another state has declined to exercise jurisdiction, and it is in the best interests of the child that the court assume jurisdiction). § 43-1203.

We first find that of the possible grounds for initial jurisdiction, home state jurisdiction was not initially applicable, because Kyley was born in South Dakota on October 18, 1996, and moved to Nebraska on or about April 1, 1997. Therefore, she had not been a resident of Nebraska exclusively and continuously for at least 6 consecutive months prior to the filing of the petition on July 17, as required by § 43-1202(5) for home state jurisdiction. Second, significant connection jurisdiction was most likely not present, because according to the affidavits submitted at the hearing on the petition, Kyley had lived in South Dakota for almost 6 months, her grandparents from each side of the family lived in South Dakota, and according to Stanfield, Kyley was only visiting Nebraska. Third, default jurisdiction was not present, as it is clear that South Dakota could have had jurisdiction over the action and had not declined to exercise it.

However, with regard to the September 16, 1997, order, the district court had emergency jurisdiction over Kyley. The emergency jurisdiction provision of the NCCJA permits a court to assume jurisdiction of a child who is physically present in this state when (1) the child has been abandoned or (2) it is necessary in an emergency to protect the child because he or she has been subjected to or threatened with mistreatment or abuse or is otherwise neglected. § 43-1203(1)(c). A child's physical presence in this state is sufficient by itself to confer jurisdiction on a court to make a child custody determination under the emergency provisions of § 43-1203(2).

In the instant case, the child was physically present in Nebraska and the record reveals that it was necessary for the district court to take custody of Kyley in order to protect her from a possible kidnapping by Stanfield and possible mistreatment by Osborne. Indeed, Osborne's affidavit alleged that Stanfield intended to "abscond with the minor child to the State of South Dakota to be with a man by the name of Mike Stone, who is of unknown character." According to Stanfield's affidavit, her return to South Dakota was a means of escaping

Osborne's physical abuse of her and her children. Based on the affidavits submitted at the hearing on August 22, 1997, the district court properly exercised emergency jurisdiction over Kyley in its September 16 order because of the danger arguably posed by either parent to the child.

According to the NCCJA, a court which has jurisdiction to make an initial decree may decline to exercise its jurisdiction anytime prior to entering a decree if the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum. § 43-1207(1). To determine whether a court is an inconvenient forum, the court shall consider the following factors, among others, to determine if it is in the best interests of the child that another state assume jurisdiction: (1) Another state is or recently was the child's home state; (2) another state has a closer connection with the child and his or her family; (3) substantial evidence concerning the child's present or future care, protection, training, and personal relationships is more readily available in another state; (4) the parties have agreed on another forum which is no less appropriate; and (5) the exercise of jurisdiction by a court of this state would contravene a purpose [of the NCCJA]. § 43-1207(3).

After finding, on September 16, 1997, that neither South Dakota nor Nebraska was Kyley's home state, the district court determined that South Dakota was the more appropriate forum under the NCCJA due to the number of witnesses from that state. However, in making this determination, the district court made it clear that it was retaining jurisdiction of the case until such time as it received an appropriate order of a South Dakota court "1) accepting jurisdiction of the case, and 2) placing the minor child in an appropriate foster home or other suitable placement other than that of [Stanfield]." In other words, the district court entered an order which wisely avoided sending the child into "jurisdictional limbo." This order is of the type clearly contemplated by § 43-1207(5) of the NCCJA, which states:

> If the court finds that it is an inconvenient forum and that a court of another state is a more appropriate forum, it may dismiss the proceedings, or *it may stay the proceedings upon condition that a custody proceeding be promptly*

*commenced in another named state or upon any other conditions which may be just and proper,* including the condition that a moving party stipulate his consent and submission to the jurisdiction of the other forum.

(Emphasis supplied.)

On October 30, 1997, the district court further conditioned its relinquishment of jurisdiction on South Dakota's accepting jurisdiction by November 7, which did not happen. On January 8, 1998, the district court held a hearing on Osborne's motion to retain jurisdiction. Stanfield argues that this was error for three reasons.

First, Stanfield alleges that the district court relinquished jurisdiction to South Dakota on September 16, 1997. Thus, she argues that because Osborne failed to file a motion for new trial or timely appeal this ruling, his motion to retain jurisdiction was a nullity. Stanfield relies upon the faulty premise that the Adams County District Court divested itself of jurisdiction on September 16 and was, therefore, without authority to make a determination with respect to Kyley's custody or paternity at any time thereafter. Stanfield simply misreads the order of September 16. The district court clearly retained jurisdiction unless and until the State of South Dakota satisfied the two conditions specified by the court's order. The argument that the Nebraska court relinquished jurisdiction fails.

Stanfield next asserts that the January 8, 1998, hearing was error because the district court no longer had subject matter jurisdiction, arguing that the court "already gave jurisdiction to South Dakota in his September 16, 1997, [order,] an order which became effective when South Dakota accepted jurisdiction in its December 24, 1997 order." Brief for appellant at 16. Once again, Stanfield's argument is premised on reading the September 16 order as a complete and total relinquishment of jurisdiction to South Dakota, which it clearly was not. Because South Dakota's acceptance of jurisdiction came after the conditioned date of November 7, the district court retained jurisdiction, and could continue to do so, on the ground that South Dakota had not satisfied its conditions, and Nebraska in the meantime had become the more appropriate forum under § 43-1207. The district court stated in its January 22, 1998, order:

The Court finds there has been a change in circumstances since the order of September 16, 1997. The child, age 15 months, has resided in Nebraska for 10 of those months. Although there may be more witnesses in South Dakota, the witnesses most qualified to testify about the child's well-being reside in Nebraska. . . . The father of the child resides in Nebraska. The Court finds substantial evidence exists in this state concerning the child's present or future care, protection, training and personal relationships. Due to the passage of time, Nebraska has the most significant contacts and closest connection with the child. At this time it would be harmful to the well-being of the child to transport her to South Dakota.

Finally, Stanfield argues that the January 8, 1998, hearing and the court's subsequent ruling retaining jurisdiction were in error because the issue of jurisdiction was res judicata. However, res judicata bars only relitigation of any right, fact, or matter directly addressed or necessarily included in a former adjudication if several conditions are satisfied, including that the former judgment was a final judgment. See *State on behalf of Hopkins v. Batt*, 253 Neb. 852, 573 N.W.2d 425 (1998). In order that a judgment be final for res judicata purposes, the order must be such as puts an end to the particular litigation or definitely puts the case out of court. 50 C.J.S. *Judgment* § 722 (1997). The September 16, 1997, order was not a final judgment concerning jurisdiction; rather, the district court stayed the proceedings pending specific action by the South Dakota court. A judgment which is not final and does not adjudicate the rights in litigation in a conclusive and definitive manner cannot be set up in bar of a subsequent action. *Iowa State Bank v. Trail*, 234 Neb. 59, 449 N.W.2d 520 (1989). Res judicata does not aid Stanfield's appeal.

Stanfield's entire appeal rests on the premise that the district court relinquished jurisdiction of the case to South Dakota on September 16, 1997, but this is incorrect. Moreover, the NCCJA specifically allows the entry of a conditional order such as the district court's order of September 16. However, the September 16 conditional order, while not a final determination of custody, was an appealable order, because it clearly affected

a substantial right and it was made in a special proceeding. See, *State v. Jacques*, 253 Neb. 247, 570 N.W.2d 331 (1997) (special proceeding includes every statutory remedy not in itself action); *State v. Schlund*, 249 Neb. 173, 542 N.W.2d 421 (1996); *In re Interest of R.G.*, 238 Neb. 405, 470 N.W.2d 780 (1991) (special proceeding means every civil statutory remedy not encompassed in Neb. Rev. Stat. ch. 25). Consequently, her appeal is without merit.

We affirm the decision of the district court retaining jurisdiction of the instant case.

AFFIRMED.