HEATHER D. PAULSEN, APPELLANT, V.
ROBERT D. PAULSEN, APPELLEE.
658 N.W.2d 49

Filed March 4, 2003.　No. A-01-1085.

Heather D. Bensen, formerly known as Heather D. Paulsen, pro se.

John E. Samson, of Samson Law Office, P.C., L.L.O., for appellee.

IRWIN, Chief Judge, and HANNON and CARLSON, Judges.

HANNON, Judge.

## INTRODUCTION

Heather D. Paulsen and Robert D. Paulsen were divorced by a Nebraska court. Later, they both left Nebraska; Heather took the couple's child, Bailey, to Arkansas with the court's permission more than 6 months before Robert commenced this proceeding to modify the divorce decree to have Bailey's custody awarded to him. No jurisdictional question was raised in the trial court, and after a hearing, the trial court modified the previous order and awarded Robert custody of Bailey. Heather appealed, alleging inter alia that the trial court lacked jurisdiction. We conclude that since the child and both parents left Nebraska more than 6 months before the application to modify was filed, the trial court did not have jurisdiction to modify its previous decree. We vacate the trial court's order and direct it to dismiss Robert's application.

## BACKGROUND

Heather and Robert were divorced on November 6, 1996, by the Thurston County District Court. They lived in Nebraska at the time. Pursuant to their agreement, the divorce decree provided for Bailey's joint custody, with Robert having physical custody and Heather visitation. At first Bailey was with Robert, but when Bailey needed close attention after surgery for a displaced hip, she recuperated at Heather's mother's home. For a time in early 1998, custody of Bailey was nearly equal. Eventually, her primary care was assigned to Heather. Judging by the orders in the transcript, the parties had several hearings concerning visitation.

Robert was originally from Blair, Nebraska, and Heather was from Tulsa, Oklahoma. After the dissolution of their marriage, both parties remarried, Robert in April 1998 and Heather sometime prior to December 1998. Robert's second wife had one child by a previous marriage, and both Robert and Heather have had additional children since the dissolution.

We learn from a study of the record that in about October 1998, Robert moved to Lawton, Iowa, which is about 4 miles from Sioux City, Iowa. Robert resided in Lawton at the time of his testimony and was employed as a general manager of training for a "Gateway Country Store" in North Sioux City, South Dakota.

About December 7, 1998, Heather moved to Springdale, Arkansas, with Bailey and her second husband because he had lost his job in South Dakota and had improved prospects in Arkansas and because Heather's mother resided in Springdale. At the time of trial, Heather was employed by Wal-Mart as a customer service representative.

In an order filed January 13, 1999, Bailey's physical custody was awarded to Heather by agreement, subject to visitation by Robert, but joint legal custody continued; Robert was ordered to pay child support, and Heather was allowed to move Bailey from Nebraska to Arkansas.

In June 1999, Heather and Bailey moved to Rogers, Arkansas, without providing Robert with their new address. In February 2000, after the current proceeding was commenced, Heather moved with Bailey to Opelika, Alabama. Heather testified that she informed Robert prior to this move, but the trial court found that she had not.

On January 3, 2000, Robert filed an application for custody modification, alleging that Heather had moved Bailey to Arkansas and that a material change of circumstances had occurred in that Heather had denied him visitation and communication with Bailey since late February 1999. Robert requested custody, child support, and reasonable attorney fees and costs. The court entered a temporary order for counseling and the development of a parenting plan. Heather filed a general denial of Robert's allegations and requested attorney fees and costs.

On October 18, 2000, a hearing was held on Robert's application for modification. Heather, Robert, Robert's mother, and Dr. Michael P. Baker, a licensed psychologist with offices in Sioux City, Iowa, who evaluated the parties and Bailey, testified at the trial. Under the Nebraska Child Custody Jurisdiction Act (NCCJA), the connection of the parties to the state of the forum and the availability of evidence in that state can affect jurisdiction. Since we conclude that Nebraska courts do not have jurisdiction

in this case, we summarize the evidence adduced at that hearing with a view to displaying the facts that might throw light upon the jurisdictional issue, rather than the issue of custody.

Heather's testimony was limited to two subjects: one, Robert's visitation with Bailey by telephone and in person, and two, Heather's explanation of why she denied or refused to facilitate visitation and communication between Robert and Bailey for almost a year. That is, Heather testified that she was concerned that Bailey was being physically abused when she visited Robert. Heather testified that she changed her telephone number in February 1999, did not provide Robert with the new number, and then moved from Springdale to Rogers. Her new number was unlisted for about 2 months.

Heather stated that Bailey enjoys her school and neighborhood friends in Alabama. According to Heather, Bailey has bonded with her maternal half brother and has a close relationship with Heather's second husband.

Robert's testimony focused mainly on the ways in which Heather had denied him visitation and communication with Bailey and instances in which Heather had encouraged Bailey to refer to him as "Rob" rather than "Dad" and to use Heather's second husband's last name rather than her legal last name, Paulsen.

Robert testified that when Bailey visits him, she enjoys swimming, jumping on the trampoline, and riding bicycles with her paternal stepbrother. Robert stated that Bailey has bonded with this stepbrother and her paternal half brother. Bailey also enjoys attending gatherings of Robert's second wife's extended family and spending time with Robert's parents. Both Robert and his second wife have extended family living within an hour of their residence.

Robert testified that his parents, who live in Blair, have been involved with Bailey since she was an infant. Robert testified that when he and Heather were married, they visited his parents with Bailey almost every weekend. He stated that when he and Heather divorced and he had custody, his "mom and dad would take Bailey for the weekend or we would go down for the weekend on occasion still pretty frequent." Robert testified that when communication and visitation between him and Bailey ceased in 1999, Bailey likewise had no interaction with his parents.

Robert's mother testified that she and Robert's father have a good relationship with Bailey, that she had interacted with Bailey prior to the custody transfer to Heather, and that she had made efforts to obtain Heather's new telephone number in 1999. In late November 1999, Robert's mother set up a conference call to allow Robert to speak to Bailey. Between January 1, 2000, and the date of the modification hearing, Robert's mother had tried to call Bailey four or five times, but was able to talk to Bailey only once.

The transcript shows that a hearing was held on January 5, 2000, and that at the time, the parties had been using the services of a family counselor located in Omaha, Nebraska. The parties were ordered to continue counseling with him and to obtain a parenting plan. The record shows no testimony from that counselor, and we find no parenting plan in the record, although one is referred to during testimony. During testimony, witnesses also referred to counseling in 1998 and 1999 in Sioux City, and Heather testified that Bailey had received counseling in Arkansas.

Baker, the above-mentioned psychologist, testified. A written report he prepared states that he was asked by Robert's attorney to assist in "this ongoing custody situation." The report shows evaluations of Robert, Heather, Robert's second wife, and Bailey were conducted between July 11 and September 19, 2000. Baker's report was admitted into evidence.

Baker testified in detail as to his observations of the parties and their relationships with Bailey. Baker testified that Heather's accusations of abuse on Robert's part could be harmful to Bailey and that Heather's lack of cooperation with visitation was a cause for concern. Baker's tests showed that Bailey had very positive feelings about both Heather and Robert and seemed content with each of them. Baker testified that in light of all the information and tests he had completed, Robert would be the more stable parent, and that it would be in Bailey's best interests to be with Robert. Baker stated that he would not necessarily endorse a custody change from Heather to Robert immediately, but that if Heather did not cease her accusations of abuse and cooperate with visitation, living with Robert would be best for Bailey.

On November 27, 2000, the court rendered an order finding that a material change in circumstances justifying custody modification had occurred. The court found that Heather had denied

Robert visitation in an attempt to alienate him from Bailey; that Heather had acted to prevent telephone contact between Robert and Bailey; that Heather had allowed Bailey to refer to Robert as "Rob" while calling Heather's second husband "dad," "daddy," or "father"; and that Heather's allegations of abuse were unsubstantiated. The court awarded custody to Robert and visitation to Heather. Heather's request for suspension of this order was denied.

Heather appealed from the order changing Bailey's custody to Robert, and we dismissed the appeal for lack of jurisdiction because the order had not determined child support and was therefore not final. See *Paulsen v. Paulsen*, 10 Neb. App. 269, 634 N.W.2d 12 (2001). On August 31, 2001, the trial court entered an order consistent with the November 27, 2000, order, but also ordered Heather to pay child support. Heather appealed from the August 2001 order.

## ASSIGNMENTS OF ERROR

Heather alleges that the trial court erred in (1) modifying the custody decree when it lacked subject matter jurisdiction and (2) finding a material change in circumstances warranting custody modification and the award of custody to Robert.

## STANDARD OF REVIEW

Subject matter jurisdiction is a question of law for the court. A jurisdictional question which does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Hoschor v. Hoschor*, 254 Neb. 743, 580 N.W.2d 516 (1998).

## ANALYSIS

### JURISDICTIONAL BASES

If the trial court lacked jurisdiction, this court also lacks jurisdiction. *Osborne v. Stanfield*, 7 Neb. App. 902, 586 N.W.2d 670 (1998). In determining whether a court should entertain a child custody proceeding having interstate implications, the court should first determine whether it has jurisdiction and then determine whether it is appropriate to exercise jurisdiction. *Kroupa v.*

*Ginn,* 2 Neb. App. 532, 511 N.W.2d 795 (1994). Therefore, we must first determine whether the trial court had jurisdiction.

We note that Heather appeared at the hearing on Robert's application for custody modification and did not then raise the question of jurisdiction. In *Blanco v. Tonniges,* 2 Neb. App. 520, 511 N.W.2d 555 (1994), the trial court modified a California judgment by changing visitation rights. The parties had proceeded in the trial court without questioning jurisdiction. This court vacated the order of the trial court and dismissed the modification application because we concluded that jurisdiction was in the California courts. The court in *Osborne, supra,* held that the parties were not free to waive a defect in subject matter jurisdiction and, finding such a defect, vacated the trial court's order. In *State ex rel. Grape v. Zach,* 247 Neb. 29, 524 N.W.2d 788 (1994), the relator raised the question of jurisdiction in a child custody case by an improper procedure. The *State ex rel. Grape* court concluded that the error was immaterial, saying, "[The petitioner's] procedural impropriety aside, the fact is that the absence of subject matter jurisdiction may be raised at any time by any party or by the court sua sponte." 247 Neb. at 35, 524 N.W.2d at 796.

One of the problems with this case is that Robert's January 3, 2000, application for modification of the previous order alleged that on February 9, 1999, the court had allowed Heather to move Bailey to Arkansas. Thus, he pleads that Nebraska is not Bailey's home state but does not allege facts which would give a Nebraska court jurisdiction. "It is a general rule that a plaintiff must plead and prove the jurisdictional facts, the facts which show that the court has jurisdiction of the subject matter of the action." *Creighton-Omaha Regional Health Care Corp. v. Douglas County,* 202 Neb. 686, 689, 277 N.W.2d 64, 67 (1979) (citing *Everts v. School Dist. No. 16,* 175 Neb. 310, 121 N.W.2d 487 (1963)). Robert does not allege that both he and Heather have been absent from Nebraska since December 1998. Heather admitted the paragraph in the application alleging that Bailey lived in Arkansas, but otherwise filed a general denial.

It does not appear that the parties complied with Neb. Rev. Stat. § 43-1209 (Reissue 1998), which requires every party, in his or her first pleading in a custody matter, to provide the child's present address, the places where the child has lived during the

past 5 years, and the names and present addresses of the people with whom the child has resided during the last 5 years. As can be observed from our summary of the facts, the parties did not see fit to directly introduce evidence that might be relevant to the determination of jurisdiction under the NCCJA. In our summary, we gave the facts affecting jurisdiction that we have distilled from the record.

■ The NCCJA, which is codified at Neb. Rev. Stat. § 43-1201 et seq. (Reissue 1998), establishes the requirements for jurisdiction when not all of the parties are residents of the same state. Section 43-1203(1) provides several different bases for settling jurisdictional problems. We will quote the relevant subdivisions of § 43-1203(1) as we consider whether each particular subdivision is or is not a basis of jurisdiction under the facts in this case. In summary, the four possible bases for the trial court's jurisdiction in this case, listed in the order of their ease of consideration, are as follows: (1) that Nebraska is Bailey's home state, (2) that Bailey was physically present in Nebraska, (3) that no other state would have jurisdiction, and (4) that Bailey's best interests require the Nebraska court to accept jurisdiction. We must consider the details of each applicable subdivision of § 43-1203(1) and other statutes where they are relevant to a particular subdivision of § 43-1203(1).

### HOME STATE

■ Section 43-1203(1)(a) provides that a Nebraska court has jurisdiction to modify a custody determination if

> [t]his state (i) is the home state of the child at the time of commencement of the proceeding, or (ii) had been the child's home state within six months before commencement of the proceeding and the child is absent from this state because of his or her removal or retention by a person claiming his or her custody or for other reasons, and a parent or person acting as parent continues to live in this state.

Section 43-1202(5) defines home state:

> Home state shall mean the state in which the child immediately preceding the time involved lived with his or her parents, a parent, or a person acting as parent, for at least six consecutive months . . . . Periods of temporary absence

of any of the named persons shall be counted as part of the six-month or other period.

It is undisputed that Bailey lived in Arkansas from December 1998 until after Robert filed the application, and then moved to Alabama. Therefore, Bailey was absent from Nebraska for more than 6 months before this proceeding was initiated on January 3, 2000. Since neither parent continued to reside in Nebraska during Bailey's absence, the second part of the home state definition does not apply. There is no basis for a holding that Nebraska is Bailey's home state.

### PRESENCE OF CHILD IN STATE

Subdivision (1)(c) of § 43-1203 provides for jurisdiction in this state when the child is physically present in this state and certain other requirements are met. Since there is no claim that Bailey was physically present in this state when the application was filed, we need not further consider the requirements of this subdivision.

### NO OTHER STATE WOULD HAVE JURISDICTION

Subdivision (1)(d) of § 43-1203 provides that a court in this state has jurisdiction to modify a child custody determination if

(i) It appears that no other state would have jurisdiction under prerequisites substantially in accordance with subdivision (a), (b), or (c) of this section, or another state has declined to exercise jurisdiction on the ground that this state is the more appropriate forum to determine the custody of the child, and (ii) it is in the best interest of the child that this court assume jurisdiction[.]

The home state provision of Arkansas' Uniform Child-Custody Jurisdiction and Enforcement Act, Ark. Code Ann. §§ 9-19-101 to 9-19-405 (Lexis 2002), is substantially similar to the NCCJA. Section 9-19-201(a)(1) gives the Arkansas court jurisdiction when Arkansas is a child's home state in words almost identical to those of the NCCJA, and § 9-19-102(7) defines home state the same as Nebraska does, though with slightly different language. Therefore, Arkansas would have had subject matter jurisdiction over this matter when Robert filed the application for modification.

A further consideration is the fact that Nebraska was the state issuing the last custody and visitation order regarding Bailey. In other words, when did Arkansas acquire the right to modify the Nebraska court's custody order? Section 9-19-203 provides that Arkansas courts may not modify a child custody determination of another state until Arkansas has jurisdiction under § 9-19-201(a)(1) or (2) and either the other state yields jurisdiction or a court of Arkansas or of the other state determines that the child, the parent, or a person acting as a parent does not presently reside in the other state. This Arkansas statute is substantially the same as Nebraska's § 43-1214. We conclude that Arkansas courts would have had jurisdiction when this proceeding was commenced, and therefore, the Nebraska trial court could not have had jurisdiction under § 43-1203(1)(d).

### BEST INTERESTS PROVISION

Subdivision (1)(b) of § 43-1203 provides for jurisdiction in Nebraska courts if

> [i]t is in the best interest of the child that a court of this state assume jurisdiction because (i) the child and his or her parents, or the child and at least one contestant, have a significant connection with this state and (ii) there is available in this state substantial evidence concerning the child's present or future care, protection, training, and personal relationships.

This is the only subdivision of § 43-1203 which could give the courts of this state jurisdiction in the case at hand. Robert relies on this provision and *State ex rel. Grape v. Zach*, 247 Neb. 29, 524 N.W.2d 788 (1994). In 1989, in the Platte County District Court, the State, on the relation of the mother, filed a filiation proceeding against the father. The court determined paternity and child support but not custody. In 1992, the mother filed a motion for custody and obtained an order granting her custody, but later, it was determined that that order was a nullity because the father had not been given the notice commensurate with due process. In 1990, the child had moved to New York with the mother. The father received possession of the child on February 27, 1992. The mother obtained possession of and kept the child in Nebraska for a while, then removed him to New York. She returned with the

child to Nebraska in August 1992, and the child remained with the father until the final order of the district court. The mother alleged that Nebraska was not the child's home state, but the district court found that it was in the child's best interests for Nebraska to assume jurisdiction because the child was born in Nebraska, the child had lived in Nebraska for several years, and expert and family witnesses with knowledge of the child's education, medical care, and speech therapy were in Nebraska. The Nebraska Court of Appeals reversed, finding that the district court lacked subject matter jurisdiction; but the Nebraska Supreme Court affirmed the judgment of the district court.

*State ex rel. Grape* is chiefly distinguished from the case at hand by the fact that in the former, one parent always remained in Nebraska. However, the fact that the question of jurisdiction under the NCCJA should be considered when raised by either party at any time is only one of the helpful rulings contained in *State ex rel. Grape*. That case also points out that "when the determination [of jurisdiction under the NCCJA] rests on factual findings, a trial court's decision on the issue will be upheld unless the factual findings concerning jurisdiction are clearly incorrect." 247 Neb. at 39, 524 N.W.2d at 798. However, the question of whether jurisdiction under the act should be exercised is a matter entrusted to the discretion of the trial court. *Id.* Assuming that Bailey and her parents, or that Bailey and at least either Heather or Robert, have significant connections with this state, as defined by the case law, it would appear that the trial court's determination of jurisdiction is a finding of fact and that the exercise of such jurisdiction is within the discretion of the trial court.

Our problem with this case is that neither *State ex rel. Grape* nor any of the other cases basing jurisdiction upon the best interests of the child as provided in § 43-1203(1)(b) contains a situation where neither parent nor the child resided in the State of Nebraska when the proceedings commenced.

Furthermore, we find no Nebraska cases where this question has been squarely put to a Nebraska court when some other state was not also exercising jurisdiction at the same time.

In the recent case *Hamilton v. Foster*, 260 Neb. 887, 620 N.W.2d 103 (2000), it was held that the district court erred in not exercising jurisdiction under the NCCJA. In *Hamilton*, a

Colorado court awarded custody of the petitioner's grandchildren to him and his live-in girl friend. The parties and the children moved to Nebraska a few years later, and a couple of years after the move, the petitioner sought sole custody in a Nebraska court. The trial court determined that it did not have jurisdiction. The Nebraska Supreme Court reversed, ruling that Colorado no longer had jurisdiction. In deciding the issue, the *Hamilton* court stated, "The end goal of the NCCJA is that litigation concerning the custody of a child take place in the state which can best decide the case." 260 Neb. at 892, 620 N.W.2d at 110 (citing § 43-1201). The *Hamilton* opinion recognized that § 43-1214(1) establishes a strong preference for the state which originally determined custody to exercise jurisdiction, and in determining whether a court of this state should exercise jurisdiction, the analysis begins with that section. If the court of another state has continuing jurisdiction under § 43-1214, that jurisdiction cannot be vitiated by another state. On the other hand, if the state issuing the previous order no longer has continuing jurisdiction, a Nebraska court may modify the previous order if Nebraska itself has jurisdiction. The *Hamilton* court determined whether Colorado had continuing jurisdiction as the state that issued the original decree giving the parties custody. In resolving that question, the court relied on the following quotation:

> "Exclusive continuing jurisdiction is not affected by the child's residence in another state for six months or more. Although the new state becomes the child's home state, significant connection jurisdiction continues in the state of the prior decree where the court record and other evidence exists [sic] and where one parent or another contestant continues to reside. *Only when the child and all parties have moved away is deference to another state's continuing jurisdiction no longer required."*

(Emphasis supplied.) 260 Neb. at 895, 620 N.W.2d at 111 (quoting Brigitte M. Bodenheimer, *Interstate Custody: Initial Jurisdiction and Continuing Jurisdiction Under the UCCJA*, 14 Fam. L.Q. 203 (1981)).

The *Hamilton* court then observed how that principle was applied:

Likewise, this court has recognized that when a child and all parties have moved away from the state in which an initial custody decree was granted, deference to that state's continuing jurisdiction is no longer required. *Smith-Helstrom v. Yonker,* 249 Neb. 449, 544 N.W.2d 93 (1996). *Deference to the issuing state's continuing jurisdiction is no longer required because when the child and the parents have moved away from the issuing state, the issuing state no longer meets the jurisdictional prerequisites of § 43-1203(b).*

(Emphasis supplied.) 260 Neb. at 895, 620 N.W.2d at 111-12. The citation to § 43-1203(b) is somewhat confusing, as there is no § 43-1203(b); but there is § 43-1203(1)(b), which of course is the subdivision which we are considering.

The cases we find that hold that a Nebraska court had jurisdiction under subdivision § 43-1203(1)(b) are all cases where either the child or one of the parents continued to live in Nebraska. See, e.g., *Smith-Helstrom v. Yonker,* 249 Neb. 449, 544 N.W.2d 93 (1996) (Nebraska court had jurisdiction to modify custody order in Nebraska dissolution decree where mother and child moved to Colorado with permission and father remained in Nebraska, notwithstanding that Colorado court had assumed jurisdiction); *State ex rel. Grape v. Zach,* 247 Neb. 29, 524 N.W.2d 788 (1994) (Nebraska court had jurisdiction to modify custody decree when mother and child moved out of state but father remained); *Range v. Range,* 232 Neb. 410, 440 N.W.2d 691 (1989) (Nebraska court retained jurisdiction under § 43-1203(1)(b) where father continued to reside in Nebraska after custody decree was entered in Nebraska and mother and children moved to Colorado); *Mace v. Mace,* 215 Neb. 640, 341 N.W.2d 307 (1983) (it was proper for Nebraska court to assume jurisdiction notwithstanding that Mississippi court awarded custody and father continued to reside in that state, because children were moved to Nebraska immediately after decree); *Blanco v. Tonniges,* 2 Neb. App. 520, 511 N.W.2d 555 (1994) (Nebraska courts did not have jurisdiction to modify custody decree when mother and child moved to Nebraska after decree was entered and father remained in California).

The case *Hart v. Hart,* 236 Kan. 856, 695 P.2d 1285 (1985), is factually similar to the case at hand. The parties were divorced

by a Kansas court in March 1981, and the mother was awarded custody of their 3-year-old child. The father moved to Oklahoma and then to Wyoming. In 1982, the mother moved with the child to Colorado. In December 1983, the parties had a disagreement regarding custody, and the father subsequently filed an application for a change of custody in the Kansas court that granted the divorce. He claimed that Kansas had jurisdiction under the Kansas version of the Uniform Child Custody Jurisdiction Act (UCCJA), the relevant part of which is identical to § 43-1203(1)(b) above. The mother pled lack of jurisdiction, and the trial court held that there were significant ties to Kansas warranting the exercise of jurisdiction. The Supreme Court of Kansas disagreed and reversed. It stated that the proper state of venue was Colorado, the home state of the child.

In its opinion, the *Hart* court stated that the purpose of the UCCJA was to limit jurisdiction, not expand it, and that there must be maximal contact with a state, not minimal. The court noted that the father had significant contacts with Kansas. It observed that the father's parents and much of his extended family lived in Kansas. It observed that the father was close to his extended family, but that the child had had only three short visits with such family in 1 year. Thus, while the father had a substantial connection with his extended family, the child's connection was minimal. The court concluded that there must be substantial contacts of the parties with the state in question concerning the child's present or future care, protection, training, and personal relationships.

In his brief, Robert cites as significant connections to Nebraska the January 12, 1999, order granting Heather the right to take Bailey from Nebraska to Arkansas, the February 5 order for specific visitation, the November 3 hearing at which Robert alleged that Heather had violated earlier orders, and the long list of orders entered by the trial court since the decree. Robert also cites a temporary order entered after this proceeding was filed; however, since it is clear that the jurisdictional issue is determined at the time a proceeding is commenced, we shall not summarize that temporary order.

Robert also points out that his parents live in Blair and that Bailey visited them on many occasions. We find evidence in the

record that Robert's parents live in Blair and that Bailey visited them, but no definitive evidence of how often Bailey visited them after the dissolution.

The principal purpose of relating the evidence in detail was to demonstrate the comparative lack of evidence that would or could demonstrate either that the parties have a significant connection to this state or that there is available "substantial evidence concerning the child's present or future care, protection, training, and personal relationships," § 43-1203(1)(b). It seems clear that the significant connection must relate to more than court proceedings that have been entered by a final order at some time in the past. After all, final orders are easily transmitted by certified copies. Of course, the fact that a Nebraska court has entertained previous proceedings in a given custody matter has been recognized as a substantial connection. See *Range v. Range*, 232 Neb. 410, 440 N.W.2d 691 (1989) (noting that one substantial contact with Nebraska was fact that Nebraska court had been involved in case since initial dissolution decree). Also, the fact that the family of one of the parties lives in Nebraska is a connection. See, e.g., *Smith-Helstrom v. Yonker*, 249 Neb. 449, 544 N.W.2d 93 (1996); *Range, supra*; *Kroupa v. Ginn*, 2 Neb. App. 532, 511 N.W.2d 795 (1994). At least one Nebraska court has considered the fact that a child was born in the forum state and lived there for a time. See *Range, supra.* However, such connections cannot not be the grounds for finding a significant connection unless the evidence shows that such connections, when extant, are truly significant. See *Hart v. Hart*, 236 Kan. 856, 695 P.2d 1285 (1985).

In this case, there seems to be nothing in the record that shows that substantial evidence existed connecting the parties to Nebraska. It seems clear that any evidence that is going to satisfy the substantial connection requirement would need to relate to the subject the parties are going to litigate. In this case, the evidence that was both adduced at the trial and in existence at the time the proceeding commenced was within the experience of the two parties. Robert's mother testified very briefly on the issue before us, but her testimony is of the same type that Heather's family in Arkansas could be expected to give.

The expert testimony situation is interesting only insofar as whence it originated. The expert that testified was from Iowa and

was retained by Robert's counsel after the action was commenced. This can hardly be considered as evidence of a significant connection with Nebraska. There is evidence that another counselor, from Omaha, had designed a parenting plan, but neither the plan nor the extent of that witness' connection to this matter is in evidence. Furthermore, Heather testified that she and Bailey were getting counseling from a counselor in Arkansas.

In conclusion, we find no case which authorizes a Nebraska court to exercise continuing jurisdiction where the child and both parents have left the state more than 6 months before the proceeding was commenced. We do not say that § 43-1203(1)(b) could never be a basis for jurisdiction after the child and both parents have been absent from the state for more than 6 months, but based on the nature of family relations in our society, it is difficult to conceive of such a situation where the required significant connection and necessary evidence would be present.

We further note that we examine the issue of significant connections in an effort to further Bailey's best interests. "[J]urisdiction exists only if it is in the *child's* interest, not merely the interest or convenience of the feuding parties, to determine custody in a particular state." (Emphasis supplied.) Unif. Child Custody Jurisdiction Act § 3, comment, 9 U.L.A. 309 (1999).

## CONCLUSION

We conclude that the trial court lacked jurisdiction and that this court also lacks jurisdiction. We therefore vacate the trial court's order and direct it to dismiss this proceeding.

VACATED AND DISMISSED.